Michael O. Hardison
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016-2078
(212) 779-9910

Attorneys for Tom Shipping
Vermittlung GmbH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
DEIULEMAR COMPAGNIA DI NAVIGAZIONE SPA,

                              Plaintiff,

        -against-

OVERSEAS WORLDWIDE HOLDING GROUP,
GULF OVERSEAS GENERAL TRADING, LLC,            07 Civ. 4655 (DAB)
GULF OVERSEAS, LLC,                                  ECF CASE
OVERSEAS SHIPPING AGENCIES,
MOS OVERSEAS SHIPPING VERMITTLUNG GMBH,
MAJDPOUR BROS. INTERNATIONAL SEA &
LAND TRANSPORT S.A., and
BORU INTERNATIONAL FREIGHT FORWARDING,

                              Defendants.
-----------------------------------------------------------------------x
HAWKNET, LTD.,

                              Plaintiff,

        -against-

                                                    07 Civ. 5912 (NRB)
OVERSEAS SHIPPING AGENCIES,                          ECF CASE
OVERSEAS WORLDWIDE HOLDING GROUP,
HOMMAY GENERAL TRADING CO., LLC,
MAJDPOUR BROS. CUSTOMS CLEARANCE,
MAJDPOUR BROS. INTERNATIONAL SEA &
LAND TRANSPORT S.A.,
GULF OVERSEAS LLC,

GULF OVERSEAS GENERAL TRADING, LLC, and
MOS OVERSEAS SHHIPPING VERMITTLUNG GMBH,

Defendants.

-----------------------------------------------------------------------x

## RAHIMZADEH DECLARATION

ASADOLLAH RAHIMZADEH, pursuant to the provisions of 28 U.S.C. § 1746,

declares and states as follows:

1.    I am the Managing Director and a shareholder of TOM Shipping Vermittlung

GmbH ("TOM Shipping"), which is a German company with an office and place of business

located at Forsterweg 22, D-22525 Hamburg, Germany (a copy of the articles of the company

is attached as Exhibit 1). I set up TOM Shipping in September 2007. I am authorized by

TOM Shipping to make this declaration.

2.    I previously worked for a company called MOS Overseas Shipping Vermittlung

GmbH ("MOS Overseas Shipping"), which has an office and place of business located at

Neuer Wall 8, D-20354 Hamburg, Germany. I was still working for MOS Overseas Shipping

when I set up TOM Shipping but resigned once I had obtained a banking facility for my new

company.  None of the directors and shareholders of TOM Shipping are directors or

shareholders of MOS Overseas Shipping.

3.    I make this declaration in aid of obtaining the release of a wire transfer in the

amount of $2,406,195.00 being restrained by The Bank of New York in connection with

legal proceedings brought by law firms Chalos, O'Conner & Duffy (07 Civ. 4655 (DAB))

and Burke and Parsons (07 Civ. 5912 (NRB)). This wire transfer represents an asset of TOM Shipping. It should not have been restrained since TOM Shipping is not a Defendant in either legal proceeding. It should be released as soon possible.

4.   On February 8, 2008, TOM Shipping (as Charterer) and Brooklands Planning PTE Ltd (as Owner) entered into a charter party for the carriage of a cargo of granular tripple super phosphate from Selaata to Iran aboard the M/V JOUDI (a copy of the charter party is attached as Exhibit 2).

5.   On March 17, 2008, TOM Shipping instructed its bank Hamburger Sparkasse AG to wire transfer the sum of $2,406,195.00 to Brooklands Planning PTE Ltd. in Singapore (a copy of the instructions is attached as Exhibit 3). The instructions clearly state that the instructing party is TOM Shipping, Forsterweg 22, D-22525 Hamburg, Germany, c/o my attention. The instructions also clearly state that the purpose of the wire transfer is to pay the M/V JOUDI freight charges. It is further clear that Hamburger Sparkasse received these instructions on March 17, 2008 (see date stamp of Hamburger Sparkasse in the bottom right corner of the instructions).

6.   On March 18, 2008, in order to get the wire transfer to Singapore, Hamburger Sparkasse sent the wire transfer to a correspondent bank in New York, The Bank of New York for onward transmittal to Singapore (a copy of the wire transfer is attached as Exhibit 4). The wire transfer states that the sum of $2,406,195.00 is for the payment of the M/V JOUDI freight charges. However, it gives a different address for TOM Shipping. The wire

–3–

transfer address for TOM Shipping is stated to be "c/o MOS Overseas Shipping Vermittlung GmbH, Neuer Wall 8, D-20354 Hamburg, Germany". This error was unknown to TOM Shipping at the time.

7.    On March 20, 2008, The Bank of New York advised Hamburger Sparkasse, who advised me, that the wire transfer was being restrained by writs of maritime attachment issued in connection with the aforementioned two legal proceedings (a copy of the advices received from The Bank of New York is attached as Exhibit 5).

8.    After I retained counsel in New York to investigate the inexplicable restraint of the wire transfer I learned from my counsel who learned from counsel for The Bank of New York that the funds were restrained because the wire transfer referenced MOS Shipping who is a named defendant in both of the aforementioned legal proceedings (a copy of the advices received from counsel for The Bank of New York is attached as Exhibit 6).

9.    I remember that when I arranged the banking for TOM Shipping in January of this year one of the individuals I dealt with asked me for my business card. At the time, I only had an MOS Overseas Shipping business card so I gave that card to the individual. However, I advised the bank that the correct address for TOM Shipping was Forsterweg 22, D-22525 Hamburg, Germany. The bank has since confirmed to me that it has this address in its records and that it understands this address to be the correct address for TOM Shipping.

10.    The only explanation for the erroneous address on the wire transfer is that Hamburger Sparkasse put my previous work address in their records in addition to the

-4-

address for TOM Shipping and mistakenly used it for the wire transfer.

11.    I asked Hamburger Sparkasse to confirm that the mistake occurred because it had the wrong address in its records and Hamburger Sparkasse did so by way of a letter dated April 3, 2008 (a copy of the letter is attached as Exhibit 7). The letter explains that due to a misunderstanding at the time I opened the account for TOM Shipping, the bank entered in its records the address for TOM Shipping as "c/o MOS Overseas Shipping Vermittlung GmbH, Neuer Wall 8, 20354 Hamburg". The letter also makes it clear that this was the only address Hamburger Sparkasse had in its records for TOM Shipping at the time of the wire transfer (i.e., March 18, 2008). The letter further makes it clear that Hamburger Sparkasse recognized the error when it entered into its records the correct address for TOM Shipping on March 26, 2008 after receiving the shareholder's agreement for TOM Shipping.

12.    I also obtained the information contained in the Commercial Register of Hamburg relating to TOM Shipping and MOS Overseas Shipping. This information was obtained by way of a Confirmation from a Notary Public dated March 31, 2008 (a copy of the Confirmation is attached as Exhibit 8). The Confirmation confirms my statement in Paragraph 2 of this Declaration that none of the directors and shareholders of TOM Shipping are directors or shareholders of MOS Overseas Shipping.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Dated: April 4th, 2008


Asadollah Rahimzadeh

Urkundenrolle Nr. 0757/2008
ST

Hiermit beglaubige ich, der Hamburgische Notar Dr. Martin Mulert, Gänsemarkt 50, 20354 Hamburg, die vorstehende, heute vor mir anerkannte Unterschrift von

Herrn Asadollah Rahimzadeh,
g. b. am 25. April 1932,
wohnhaft: Försterweg 22, 22525 Hamburg,
mir, dem Notar, von Person bekannt.

Hamburg, den 04.04.2008



Notar

Kosten-Berechnung
gem. Kostenordnung

Wert: EUR 500.000,00

| | | |
|---|---|---|
| Gebühr §§ 141, 32, 45 KostO | EUR | 130,00 |
| Umsatzsteuer 19% | EUR | 24,70 |
| | EUR | 154,70 |

Notar:

# Exhibit 1

**Deed No. 1939/2007**
**NF**
**File: NF 1463 MM**

**Dr. Bernhard v. Schweinitz**
**Dr. Detlef Thomsen**
**Dr. Jürgen Bredthauer**
**Dr. Andre Vollbrecht**
**Dr. Michael Commichau**
**Dr. Martin Mulert, LL. M.**
**NOTARIAL OFFICE *am Gänsemarkt***
**Gänsemarkt 50**
**20354 Hamburg**

**Tel. (040) 35 55 3 - 0**
**Fax (040) 35 55 3 - 300**
info@notariat-amgaensemarkt.de

[see source for symbol]

## COPY

Negotiated in the Free and Hanseatic City of Hamburg

on September 4 (fourth), 2007 (two thousand seven).


The following parties appeared today before me,

the Hamburg notary

**Dr. Martin Mulert**

- 2 -

in my office, Gänsemarkt 50:

Mr. Asadollah Rahimzadeh
born April 24, 1932
residing at: Försterweg 22, 22525 Hamburg,
known personally to me, the notary

acting here

a) on his own behalf

b) not in his own name, rather on the basis of the power of attorney dated August 31, 2007 (Notary's deed register No. 1919/2007 of the notary Dr. Martin Mulert), which was present as an original upon notarization and a copy of which is enclosed with this deed as an **Annex**, which I hereby certify, for

Ms. Rasa Soufi Amlashi
born September 5, 1985
residing at: Harvestehuder Weg 79, 20149 Hamburg,

c) acting not in her own name, rather on the basis of the power of attorney dated August 31, 2007 (notary's deed register No. 1920/2007 of the notary Dr. Martin Mulert), which was present as an original upon notarization and a copy of which is enclosed with this deed as an **Annex**, which I hereby certify, for

Ms. Akram Alizadeh Matanagh
born on January 24, 1959
residing at: Harvest 79, 20149 Hamburg,

The party appearing, according to his information and the persuasion of the notary, has a high command of the German language. After having been advised by the notary, the party appearing abstained from the inclusion of an interpreter and the creation and enclosure of a written translation.

For my record, the party appearing declared:

I.

We hereby found a limited liability company and stipulate the articles of association as follows:

§ 1

Company, Headquarters

(1) The name of the company is as follows:

TOM Shipping Vermittlung GmbH

NP 1463 MM - GMBH GRUENDUNG.DOC

- 3 -

(2)     The company has its headquarters in Hamburg.

§ 2

Object of the Company

(1) The object of the company is brokering sea and land cargo transactions and all transactions associated with this with the exception of activities requiring a permit.

(2) The company may acquire interest in other companies, acquire other companies, and create branch offices domestically and abroad.

§ 3

Capital Stock, Capital Contributions

(1)     The capital stock amounts to 45,000.00 EUR (in words: forty five thousand Euros).

(2)     Of this, the following founding partners assume

Mr. Asadollah Rahimzadeh
born on April 24, 1932,
Hamburg,
a capital contribution to the amount of                         15,000.00 EUR

Ms. Rasa Soufi Amlashi,
born on September 5, 1985,
Hamburg,
a capital contribution to the amount of                         15,000.00 EUR

Ms. Akram Alizadeh Matanagh,
born on January 24, 1959,
a capital contribution to the amount of                         15,000.00 EUR

(3)     The contributions are to be made in cash and are due in full effective immediately.

§ 4
Duration, Fiscal Year

(1) The duration of the company has not been defined.

(2) The fiscal year represents the calendar year.

NF 1463 MM - GMBH GRUENDUNG.DOC

- 4 -

§ 5

Management, Representation

(1)    The company has one or more managing directors. If the company only has one managing director, then this party is entitled to sole representation. In the event of multiple managing directors, two of them or one managing director together with an authorized company signatory are entitled to represent the company. The partners may, however, grant an individual power of representation.

(2)    The managing directors can, by means of a resolution of the partners, be exempted from the restrictions of § 181 *BGB* [German Civil Code]. The sole managing director is exempted from the restrictions of § 181 *BGB*.

(3)    The above paragraphs (1) and (2) apply accordingly to any Liquidator.

(4)    The meeting of the partners may, at any time, make the execution of certain legal transactions or specific types of legal transactions dependant on the prior consent of the meeting of the partners without the power of representation of the managing directors being restricted vis-à-vis third parties.

§ 6

Meeting of the Partners

(1)    The meetings of the partners generally take place at the headquarters of the company.

(2)    The meetings of the partners are generally called by the management in writing. The time, place, and agenda are to be specified. The notice period amounts to two weeks. The date of forwarding and the date of the meeting are not counted in this respect.

(3) The partners shall pass their resolutions generally at the meetings of the partners. They may, however, also be made in writing, by telephone, or in another manner providing all partners agree to such a procedure.

Resolutions passed are to be recorded by the management and are to be forwarded to the partners. They may only be objected to within one month following the receipt of the record by way of action.

(4) The resolutions originate with a basic majority of the votes submitted to the extent these articles of association or an imperative statutory provision prescribes another majority. Every € 50.00 of the face value for a business share grants one vote. In the event of a tie vote, a motion shall be deemed rejected.

(5) Deputy representation is only permissible through another partner or through a person obliged to maintain professional secrecy. The representation requires a written power of attorney.

- 5 -

§ 7

Annual Report, Allocation of Profits

(1)    The annual report is to be compiled by the management within the statutory period following the passing of the fiscal year and to be promptly submitted to the partners for assessment.

The partners are to assess the annual report within the statutory period and to deliberate regarding the allocation of profits.

(2) The partners are entitled to the distribution of profits unless the meeting of the partner rules by means of a basic majority of the votes submitted on the formation of reserves and/or profits carried forward.

§ 8

Assignment of Business Shares

(1)    The assignment of business shares and partial business shares as well as any other disposition thereof requires - with the exception of dispositions benefiting fellow partners - the consent of the company for their validity. Internally, this may only be granted if a corresponding unanimous resolution of the partners is in place.

(2)    The provisions of § 17 GmbH Act remain unaffected.

(3)    If a partner wishes to sell his/her business share, but is denied the necessary permission to do so as per (1) or does not issue his written request to do so within one month, then he may request that the other partners perform the redemption or order the transfer of the business share to another buyer, whom they specify, by means of a resolution. § 12 applies to the fee. If such a resolution is not provided to the partner within the passing of another month, then the assignation no longer requires permission as per Paragraph (1) Clause 1.

§ 9

Inheritance of Business Shares

(1)    The business shares are inheritable.

(2)    If the business share is assigned to a collective body of persons due to death, then they are obliged to appoint a collective representative, who exercises their rights arising from the business share in a uniform manner. As long as a collective representative has not been appointed, their rights are drawn from the business share.

(3) No permission from the company is necessary to divide a business share among the heirs of a deceased partner.

NF 1463 MM - GMBH GRUENDUNG.DOC

- 6 -

§ 10

<u>Exemption from the Ban on Competition</u>

The partners and the managing directors are generally permitted to conduct ancillary activities and transactions. To the extent such transactions may affect the business area of the company, the meeting of the partners shall decide regarding exemption from the ban on competition and shall stipulate its nature and scope as well as any remuneration in this regard.

§ 11

<u>Redemption of Business Shares</u>

(1)     The business share of a partner may be redeemed if

  (a)     the partner agrees to this or requests redemption (§ 8 Para. 3).

  (b)     insolvency proceedings concerning his/her state are initiated or their initiation is denied due to insufficient assets

  (c)     a creditor of the partner levies execution targeting the business share and the execution has not been lifted within six weeks or

  (d)     another good reason corresponding to § 133 HGB [German Commercial Code] is in place.

(2)     In place of the redemption, the meeting of the partners may also order the transfer of the business share to a buyer, which it stipulates.

(3)     The redemption and the order of the transfer occur through the management on the basis of a unanimous resolution of the partners; the partner affected by this does not have a right to vote.

§ 12

<u>Redemption Fee</u>

(1)     In exchange for the redemption or transfer, the affected partner is entitled to a fee. This is determined on the basis of a balance sheet, in which all asset items of the company are to be applied at their true value while dissolving undisclosed reserves. Any good will does not come into consideration.

(2)     The effective date of the balance sheet is the day, on which the event takes place, which authorizes the resolution regarding the redemption or transfer.

(3)     The fee is to be paid in 6 equal installments. The first installment is due for payment 6 months following the declaration of the redemption by the management of the company. The following installments are each to be paid 6 months following the due day of the previous installment.

- 7 -

(4)    The respective outstanding component of the fee is to be compounded from the day the redemption is declared by the management at 5 % p.a.

§ 13

Grouping of Business Shares

Multiple business shares, which have been paid in full, belonging to the same partner can be grouped into one business share with the consent of the applicable partner by means of a resolution of the partners.

§ 14

Publications

The publications of the company are only made in the electronic Bundesanzeiger [German Federal Gazette].

§ 15

Jurisdiction

The jurisdiction for all potential disputes resulting from this agreement constitutes the headquarters of the company to the extent this is permitted by law.

§ 16

Costs and Expenses

The costs and expenses of the foundation shall be borne by the company up to a sum of 3,500.00 EUR; any foundation costs exceeding this amount shall be borne by the partners in relation to their capital contributions.

II.

Resolution of the Partners

As founders and the first partners, we shall, from now on, hold a meeting of the partners and rule on the following:

1.    The following persons will be named the first managing directors of the company:

Mr. Asadollah Rahimzadeh,
born on April 24, 1932,
residing at: Försterweg 22, 22525 Hamburg

NF 1463 MM - GMBH GRUENDUNG.DOC

- 8 -

Ms. Rasa Soufi Amlashi,
borne September 5, 1985
residing at: Harvestehuder Weg 79, 20149 Hamburg

The managing directors are each continually entitled to individual representation and are continually exempted from the restrictions o f § 181 BGB.

2. The business premises of the company are located at:
c/o Mr. Rahimzadeh, Försterweg 22, 22525 Hamburg.

III.

Power of Attorney

We hereby empower

Mr. Peter Ramin,
Mr. Deiter Rüpcke,
Mr. Wolfgang Nickel,
Ms. Petra Drews,
Ms. Nicole Freckmann,
Ms. Jessica Eichmann,

all employees of the notarial office, Gänsemarkt 50, 20354 Hamburg,

that is, each individually, with exemption from the restrictions of § 181 BGB, to change the provisions agreed upon in the above articles of association both substantively and formally on behalf of all partners and to supplement, to make unanimous resolutions for its amendment and to register this.

The power of attorney is unrestricted vis-à-vis third parties. Internally, the parties empowered are instructed to only use this power of attorney if the management of the company has approved a change or supplement.

The power of attorney will be granted independent of the validity of this deed. It shall expire with the entry of the company in the commercial register.

IV.

Notes

The notary is to point out that

a) the limited liability company originates as such first upon entry in the commercial register and those acting in its name prior to entry are liable personally,

b) each partner is liable for deficits if the value of the company assets upon entry of the company in the commercial register is less than the share capital,

NF 1463 MM - GMBH GRUENDUNG.DOC

- 9 -

c)  the partners and the managing directors are, under certain circumstances, obliged to provide compensation and are responsible with respect to penal legislation in the event of false information or damage to the company through capital contributions or founding expenditure,

d)  partner loans replacing capital will, under certain circumstances, be treated as liable capital,

e)  obligations to make capital contributions cannot be fulfilled by means of hidden contributions in kind (e.g. offsetting or prepayments),

f)  joint and several liability exists with respect to the capital contributions as well as for costs and expenses,

g)  the parties paid in are responsible for evaluating the fiscal consequences of this agreement and the notary assumes no guarantee in this respect.

Read, approved, and signed

signed Asadollah Rahimzadeh

(SEAL) signed Dr. Mulert, notary

-> This printout will not be signed and is deemed a certified copy <-

| Number of the entry | a) Name<br>b) Headquarters, office, branch offices<br>c) Object of the company | Capital stock or share capital | a) General representation provision<br>b) Executive, managing bodies, managing directors, personally liable partners, managing directors, authorized representatives, and special power of representation | Powers of attorney | a) Legal form, start, statutes or articles of association<br>b) Other legal relationships | a) Day of entry<br>b) Comments |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 1 | a)<br>TOM Shipping Vermittlung GmbH<br><br>b)<br>Hamburg<br><br>c) Brokerage of sea and land cargo transactions and all associated transactions with the exception of activities requiring a permit. | 45,000.00 EUR | a)<br>If the company only has one managing director, then this party is entitled to sole representation. In the event of multiple managing directors, then the company will be represented by two managing directors or by one managing director together with an authorized company signatory.<br>Sole power of representation may be granted. The managing directors may be empowered to execute legal transactions in the name of the company for their own account or as a representative of a third party.<br>The sole managing director is authorized to carry out legal transactions in the name of the company for his own account or as a representative of a third party.<br><br>b)<br>Managing director:<br>Rahimzadeh, Asadoliah, Hamburg, 04/24/1932<br>solely authorized representative; with the authority to execute legal transactions in the name of the company for his own account or as a representative of a third party.<br><br>Managing director:<br>Amlashi, Rasa, Hamburg, 09/05/1985, solely authorized representative; with the authority to execute legal transactions in the name of the company for her own account or as a representative of a third party | | a)<br><br>Limited liability company<br><br>Articles of association dated 09/04/2007 | a)<br>09/13/2007<br>Kruse |

[Commercial]register B of the registration court Hamburg  **Official printout**  Company number:  **HRB 102397**
**Accessed on 11/13/2007 10:54**  **Page 2 of 2**
**-> This printout will not be signed and is deemed a certified copy <-**

| Number of the entry | a) Name<br>b) Headquarters, office, branch offices<br>c) Object of the company | Capital stock or share capital | a) General representation provision<br>b) Executive, managing bodies, managing directors, personally liable partners, managing directors, authorized representatives, and special authorization to represent | Powers of attorney | a) Legal form, start, statutes or articles of association<br>b) Other legal relationships | a) Day of entry<br>b) Comments |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |

Hamburg, 11/13/2007
The printout affirms the content from the commercial register
Hell, senior court official
Bailiff of the court          [signature]          [seal]
                                                   *[illegible]*
                                                   Hamburg

UR-Nr. 1939/2007
NF
Akte: NF 1463 MM

Dr. Bernhard v. Schwelnitz
Dr. Detlef Thomsen
Dr. Jürgen Bredthauer
Dr. Andre Vollbrecht
Dr. Michael Commichau
Dr. Martin Mulert, LL.M.

NOTARIAT am Gänsemarkt

Gänsemarkt 50
20354 Hamburg

Tel. (040) 35 55 3 – 0
Fax (040) 35 55 3 – 300
info@notariat-amgaensemarkt.de



# ABSCHRIFT

Verhandelt in dieser Freien und Hansestadt Hamburg

am 04. (vierten) September  2 0 0 7  (zweitausendsieben).

Vor mir,

dem Hamburgischen Notar

# Dr. Martin Mulert

- 2 -

erschien heute in meinen Amtsräumen, Gänsemarkt 50:

Herr Asadollah Rahimzadeh,
geb. am 24. April 1932,
wohnhaft: Försterweg 22, 22525 Hamburg,
mir, dem Notar, von Person bekannt,

hier handelnd

a)    für sich persönlich,

b)    handelnd nicht im eigenen Namen, sondern aufgrund der Vollmacht vom 31. August
2007 (UR Nr. 1919/2007 des Notars Dr. Martin Mulert), die bei Beurkundung im Origi-
nal vorlag und dieser Urkunde als **Anlage** in Abschrift, welche ich hiermit beglaubige,
beigefügt ist, für

Frau Rasa Soufi Amlashi,
geb. am 5. September 1985,
wohnhaft: Harvestehuder Weg 79, 20149 Hamburg,

c)    handelnd nicht im eigenen Namen, sondern aufgrund der Vollmacht vom 31. August
2007 (UR Nr. 1920/2007 des Notars Dr. Martin Mulert), die bei Beurkundung im Origi-
nal vorlag und dieser Urkunde als **Anlage** in Abschrift, welche ich hiermit beglaubige,
beigefügt ist, für

Frau Akram Alizadeh Matanagh,
geb. am 24. Januar 1959,
wohnhaft: Harvestehuder Weg 79, 20149 Hamburg.

Der Erschienene ist nach seinen Angaben und nach Überzeugung des Notars der deutschen
Sprache sehr gut kundig. Nach Belehrung durch den Notar verzichtete der Erschienene auf
die Hinzuziehung eines Dolmetschers und die Anfertigung und Beifügung einer schriftlichen
Übersetzung.

Der Erschienene erklärte zu meinem Protokoll:

I.

Wir errichten hiermit eine Gesellschaft mit beschränkter Haftung und legen den Gesell-
schaftsvertrag wie folgt fest:

§ 1

Firma. Sitz

(1)    Die Firma der Gesellschaft lautet:

TOM Shipping Vermittlung GmbH.

NP 1463 MM - GMBH GRUENDUNG.DOC

- 3 -

(2)    Die Gesellschaft hat ihren Sitz in Hamburg.

§ 2

Gegenstand des Unternehmens

(1)    Der Gegenstand des Unternehmens ist die Vermittlung von See- und Landfrachtge-
schäften und alle damit im Zusammenhang stehenden Geschäfte, mit Ausnahme er-
laubnispflichtiger Tätigkeiten.

(2)    Die Gesellschaft kann sich an anderen Unternehmen beteiligen, andere Unternehmen
erwerben und Zweigniederlassungen im In- und Ausland errichten.

§ 3

Stammkapital, Stammeinlagen

(1)    Das Stammkapital beträgt EUR    45.000,00 (in Worten: Euro fünfundvierzigtausend).

(2)    Hierauf übernehmen als Gründungsgesellschafter

Herr Asadollah Rahimzadeh,
geb. am 24. April 1932,
Hamburg,
eine Stammeinlage in Höhe von          EUR    15.000,00

Frau Rasa Soufi Amlashi,
geb. am 5. September 1985,
Hamburg,
eine Stammeinlage in Höhe von          EUR    15.000,00

Frau Akram Alizadeh Matanagh,
geb. am 24. Januar 1959,
Hamburg,
eine Stammeinlage in Höhe von          EUR    15.000,00.

(3)    Die Einlagen sind in bar zu leisten und sofort in voller Höhe fällig.

§ 4

Dauer, Geschäftsjahr

(1)    Die Dauer der Gesellschaft ist unbestimmt.

(2)    Das Geschäftsjahr ist das Kalenderjahr.

- 4 -

§ 5

Geschäftsführung, Vertretung

(1) Die Gesellschaft hat einen oder mehrere Geschäftsführer. Hat die Gesellschaft nur einen Geschäftsführer, so ist dieser einzelvertretungsberechtigt. Bei mehreren Geschäftsführern sind je zwei von ihnen oder ein Geschäftsführer gemeinsam mit einem Prokuristen zur Vertretung der Gesellschaft berechtigt. Die Gesellschafter können jedoch durch Beschluss Einzelvertretungsbefugnis verleihen.

(2) Geschäftsführer können durch Gesellschafterbeschluss von den Beschränkungen des § 181 BGB befreit werden. Der alleinige Geschäftsführer ist von den Beschränkungen des § 181 BGB befreit.

(3) Die vorstehenden Absätze (1) und (2) gelten entsprechend für jeden Liquidator.

(4) Die Gesellschafterversammlung kann jederzeit durch Beschluss die Vornahme bestimmter Rechtsgeschäfte oder bestimmter Arten von Rechtsgeschäften von der vorherigen Zustimmung der Gesellschafterversammlung abhängig machen, ohne dass die Vertretungsmacht der Geschäftsführer im Außenverhältnis beschränkt ist.

§ 6

Gesellschafterversammlung

(1) Die Gesellschafterversammlungen finden grundsätzlich am Sitz der Gesellschaft statt.

(2) Die Gesellschafterversammlungen werden durch die Geschäftsführung schriftlich einberufen. Zeit, Ort und Tagesordnung sind anzugeben. Die Frist beträgt zwei Wochen. Der Tag der Absendung und der Tag der Versammlung zählen nicht mit.

(3) Die Gesellschafter fassen ihre Beschlüsse grundsätzlich in Gesellschafterversammlungen. Sie können aber auch schriftlich, fernmündlich oder auf sonstige Art gefasst werden, wenn alle Gesellschafter mit dem Verfahren einverstanden sind.

Gefasste Beschlüsse sind von der Geschäftsführung zu protokollieren und den Gesellschaftern zu übersenden. Sie können nur innerhalb eines Monats ab Zugang des Protokolls durch Klage angefochten werden.

(4) Die Beschlüsse kommen mit einfacher Mehrheit der abgegebenen Stimmen zustande, soweit nicht dieser Gesellschaftsvertrag oder eine zwingende gesetzliche Bestimmung eine andere Mehrheit vorschreibt. Je EUR 50,00 des Nennbetrages eines Geschäftsanteils gewähren eine Stimme. Bei Stimmengleichheit gilt ein Antrag als abgelehnt.

(5) Stellvertretung ist nur durch einen anderen Gesellschafter oder durch eine zur Berufsverschwiegenheit verpflichtete Person zulässig. Der Vertreter bedarf einer schriftlichen Vollmacht.

- 5 -

## § 7

### Jahresabschluss, Gewinnverwendung

(1)   Der Jahresabschluss ist von der Geschäftsführung innerhalb der gesetzlichen Frist nach Ablauf eines Geschäftsjahres aufzustellen und unverzüglich den Gesellschaftern zur Feststellung vorzulegen.

Die Gesellschafter haben den Jahresabschluss innerhalb der gesetzlichen Frist festzustellen und über die Ergebnisverwendung zu beschließen.

(2)   Die Gesellschafter haben Anspruch auf Gewinnausschüttung, es sei denn, die Gesellschafterversammlung beschließt mit einfacher Mehrheit der abgegebenen Stimmen die Bildung von Rücklagen und/oder Gewinnvorträgen.

## § 8

### Abtretung von Geschäftsanteilen

(1)   Die Abtretung von Geschäftsanteilen und Teilgeschäftsanteilen sowie jede sonstige Verfügung hierüber bedarf – mit Ausnahme von Verfügungen zugunsten von Mitgesellschaftern – zu ihrer Wirksamkeit der Zustimmung der Gesellschaft. Diese darf im Innenverhältnis nur erteilt werden, wenn ein entsprechender einstimmig gefasster Gesellschafterbeschluss vorliegt.

(2)   Die Bestimmungen des § 17 GmbH-Gesetz bleiben unberührt.

(3)   Will ein Gesellschafter seinen Geschäftsanteil veräußern, wird ihm jedoch die erforderliche Genehmigung gemäß Absatz (1) verweigert oder nicht binnen eines Monats seit seinem schriftlichen Antrag erteilt, so kann er verlangen, dass die anderen Gesellschafter durch Beschluss entweder die Einziehung vornehmen oder die Übertragung des Geschäftsanteils auf einen von ihnen bestimmten Erwerber anordnen. Für das Entgelt gilt § 12. Wird dem Gesellschafter ein solcher Beschluss nicht innerhalb eines weiteren Monats zugestellt, so bedarf die Abtretung nicht mehr der Zustimmung gemäß Absatz (1) Satz 1.

## § 9

### Vererbung von Geschäftsanteilen

(1)   Die Geschäftsanteile sind vererblich.

(2)   Fällt der Geschäftsanteil von Todes wegen mehreren Personen gemeinschaftlich zu, so sind diese verpflichtet, einen gemeinsamen Vertreter zu bestellen, der ihre Rechte aus dem Geschäftsanteil einheitlich ausübt. Solange ein gemeinsamer Vertreter nicht bestellt ist, ruhen ihre Rechte aus dem Geschäftsanteil.

(3)   Zur Teilung eines Geschäftsanteils unter den Erben eines verstorbenen Gesellschafters ist keine Genehmigung der Gesellschaft erforderlich.

- 6 -

## § 10

### Befreiung vom Wettbewerbsverbot

Den Gesellschaftern und den Geschäftsführern sind Nebentätigkeiten und Nebenge-
schäfte grundsätzlich gestattet. Soweit solche Geschäfte den Geschäftsbereich der
Gesellschaft berühren können, entscheidet die Gesellschafterversammlung über die
Befreiung vom Wettbewerbsverbot und legt dessen Art und Umfang sowie das etwaige
Entgelt fest.

## § 11

### Einziehung von Geschäftsanteilen

(1)     Der Geschäftsanteil eines Gesellschafters kann eingezogen werden, wenn

   (a)   der Gesellschafter zustimmt oder die Einziehung verlangt (§ 8 Absatz 3),

   (b)   ein Insolvenzverfahren über sein Vermögen eröffnet oder die Eröffnung mangels
         Masse abgelehnt worden ist,

   (c)   ein Gläubiger des Gesellschafters die Zwangsvollstreckung in den Geschäftsan-
         teil betreibt und die Vollstreckungsmaßnahme nicht innerhalb von sechs Wochen
         aufgehoben worden ist oder

   (d)   ein sonstiger wichtiger Grund entsprechend § 133 HGB vorliegt.

(2)     Anstelle der Einziehung kann die Gesellschafterversammlung auch die Übertragung
        des Geschäftsanteils auf einen von ihr bestimmten Erwerber anordnen.

(3)     Die Einziehung und die Anordnung der Übertragung erfolgen durch die Geschäftsfüh-
        rung aufgrund eines einstimmigen Beschlusses der Gesellschafter; der betroffene Ge-
        sellschafter hat kein Stimmrecht.

## § 12

### Einziehungsentgelt

(1)     Gegen Einziehung oder Übertragung steht dem betroffenen Gesellschafter ein Entgelt
        zu. Es ergibt sich aus einer Bilanz, in der sämtliche Gegenstände des Vermögens der
        Gesellschaft mit ihrem wahren Wert unter Auflösung stiller Reserven anzusetzen sind.
        Ein etwaiger Firmenwert (good will) bleibt außer Betracht.

(2)     Bilanzstichtag ist der Tag, an dem das Ereignis eintritt, das zu dem Beschluss über die
        Einziehung oder Übertragung berechtigt.

(3)     Das Entgelt ist in 6 gleichen Teilbeträgen zu zahlen. Der erste Teilbetrag ist 6 Monate
        nach Erklärung der Einziehung durch die Geschäftsführung der Gesellschaft zur Zah-
        lung fällig. Die folgenden Teilbeträge sind jeweils 6 Monate nach Fälligkeit des voraus-
        gehenden Teilbetrages zu zahlen.

- 7 -

(4) Der jeweils offenstehende Teil des Entgeltes ist vom Tage der Erklärung der Einziehung durch die Geschäftsführung an mit 5 % p.a. zu verzinsen. Die Zinsen sind mit der jeweils nächsten Rate des Entgelts fällig.

## § 13

### Zusammenlegung von Geschäftsanteilen

Mehrere voll eingezahlte Geschäftsanteile desselben Gesellschafters können mit Zustimmung des betroffenen Gesellschafters durch Gesellschafterbeschluss zu einem Geschäftsanteil zusammengelegt werden.

## § 14

### Bekanntmachungen

Die Veröffentlichungen der Gesellschaft erfolgen nur im elektronischen Bundesanzeiger.

## § 15

### Gerichtsstand

Gerichtsstand für alle etwaigen Streitigkeiten aus diesem Vertrage ist der Sitz der Gesellschaft, soweit dieses gesetzlich zulässig ist.

## § 16

### Kosten und Abgaben

Die Kosten und Abgaben der Gründung trägt die Gesellschaft bis zu einem Betrag von EUR 3.500,00; etwa darüber hinausgehende Gründungskosten tragen die Gesellschafter im Verhältnis ihrer Einlagen.

## II.

### Gesellschafterbeschluss

Als Gründer und erste Gesellschafter halten wir nunmehr eine Gesellschafterversammlung ab und beschließen folgendes:

1.    Zu ersten Geschäftsführern der Gesellschaft werden bestellt:

Herr Asadollah Rahimzadeh,
geb. am 24. April 1932,
wohnhaft: Försterweg 22, 22525 Hamburg

- 8 -

Frau Rasa Soufi Amlashi,
geb. am 5. September 1985,
wohnhaft: Harvestehuder Weg 79, 20149 Hamburg

Die Geschäftsführer sind jeweils stets einzelvertretungsberechtigt und stets von den Beschränkungen des § 181 BGB befreit.

2.    Die Geschäftsräume der Gesellschaft befinden sich:
c/o Herrn Rahimzadeh, Försterweg 22, 22525 Hamburg.

III.

Vollmacht

Wir bevollmächtigen hiermit

Herrn Peter Ramin,
Herrn Dieter Rüpcke,
Herrn Wolfgang Nickel,
Frau Petra Drews,
Frau Nicole Freckmann,
Frau Jessica Eichmann,

sämtlich Notariatsmitarbeiter, Gänsemarkt 50, 20354 Hamburg,

und zwar einen jeden für sich allein, unter Befreiung von den Beschränkungen des § 181 BGB, die in dem vorstehenden Gesellschaftsvertrag vereinbarten Bestimmungen sowohl materiell als auch formell für sämtliche Gesellschafter zu ändern und zu ergänzen, entsprechende Abänderungsbeschlüsse einseitig zu fassen und zur Anmeldung zu bringen.

Die Vollmacht ist im Außenverhältnis unbeschränkt. Im Innenverhältnis werden die Bevollmächtigten angewiesen, von dieser Vollmacht nur Gebrauch zu machen, wenn die Geschäftsführung der Gesellschaft einer Änderung oder Ergänzung zugestimmt hat.

Die Vollmacht wird unabhängig von der Wirksamkeit dieser Urkunde erteilt. Sie erlischt mit Eintragung der Gesellschaft im Handelsregister.

IV.

Hinweise

Der Notar hat darauf hingewiesen, dass

a)    die Gesellschaft mit beschränkter Haftung als solche erst mit der Eintragung in das Handelsregister entsteht und die vor Eintragung in ihrem Namen Handelnden persönlich haften,

b)    jeder Gesellschafter für Fehlbeträge haftet, wenn der Wert des Gesellschaftsvermögens bei Eintragung der Gesellschaft in das Handelsregister niedriger ist als das Stammkapital,

- 9 -

c)  die Gesellschafter und Geschäftsführer bei falschen Angaben oder Schädigung der
    Gesellschaft durch Einlagen oder Gründungsaufwand u. U. ersatzpflichtig und straf-
    rechtlich verantwortlich sind,

d)  kapitalersetzende Gesellschafterdarlehen u. U wie haftendes Kapital behandelt wer-
    den,

e)  Bareinlageverpflichtungen nicht durch verdeckte Sacheinlagen (z.B. Verrechnungen
    oder Vorausleistungen) erfüllt werden können,

f)  bezüglich der Stammeinlagen sowie für Kosten und Abgaben eine gesamtschuldneri-
    sche Haftung besteht,

g)  es allein Sache der Beteiligten ist, die steuerlichen Folgen dieses Vertrages zu über-
    prüfen und der Notar insoweit keine Gewähr übernimmt.

Vorgelesen, genehmigt und unterschrieben:

                                    gez. Asadollah Rahimzadeh

                    (SIEGEL)   gez. Dr. Mulert, Notar

...sregister B des Amtsgerichts Hamburg

**Amtlicher Ausdruck**
**Abruf vom 13.11.2007 10:54**

Nummer der Firma:
Seite 1 von 2

HRB 102397

->Dieser Ausdruck wird nicht unterschrieben und gilt als beglaubigte Abschrift<-

| Nummer der Eintragung | a) Firma b) Sitz, Niederlassung, Zweigniederlassung c) Gegenstand des Unternehmens | Grund- oder Stammkapital | a) Allgemeine Vertretungsregelung b) Vorstand, Leitungsorgan, geschäftsführende Direktoren, persönlich haftende Gesellschafter, Geschäftsführer, Vertretungsberechtigte und besondere Vertretungsbefugnis | Prokura | a) Rechtsform, Beginn, Satzung oder Gesellschaftsvertrag b) Sonstige Rechtsverhältnisse | a) Tag der Eintragung b) Bemerkungen |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 1 | a) TOM Shipping Vermittlung GmbH b) Hamburg c) Vermittlung von See- und Landfrachtgeschäften und alle damit im Zusammenhang stehenden Geschäfte, mit Ausnahme erlaubnispflichtiger Tätigkeiten. | 45.000,00 EUR | a) Ist nur ein Geschäftsführer vorhanden, so vertritt er die Gesellschaft allein. Sind mehrere Geschäftsführer vorhanden, so wird die Gesellschaft durch zwei Geschäftsführer oder durch einen Geschäftsführer gemeinsam mit einem Prokuristen vertreten. Alleinvertretungsbefugnis kann erteilt werden. Geschäftsführern können ermächtigt werden, im Namen der Gesellschaft mit sich im eigenen Namen oder als Vertreter eines Dritten Rechtsgeschäfte vorzunehmen. Der einzelige Geschäftsführer ist befugt, im Namen der Gesellschaft mit sich im eigenen Namen oder als Vertreter eines Dritten Rechtsgeschäfte vorzunehmen. b) Geschäftsführer: Rahirzadeh, Assadollah, Hamburg, *24.04.1932 einzelvertretungsberechtigt mit der Befugnis, im Namen der Gesellschaft mit sich im eigenen Namen oder als Vertreter eines Dritten Rechtsgeschäfte abzuschließen. Geschäftsführer: Ambakil, Rasar. Hamburg, *05.09.1985 einzelvertretungsberechtigt mit der Befugnis, im Namen der Gesellschaft mit sich im eigenen Namen oder als Vertreter eines Dritten Rechtsgeschäfte abzuschließen. | | a) Gesellschaft mit beschränkter Haftung Gesellschaftsvertrag vom 04.09.2007 | a) 13.09.2007 Kruse |

3 des Amtsgerichts Hamburg

**Amtlicher Ausdruck**
Abruf vom 13.11.2007 10:54

Nummer der Firma:
Seite  2  von  2

HRB 102397

-›Dieser Ausdruck wird nicht unterschrieben und gilt als beglaubigte Abschrift‹-

| Nummer der Eintragung | a) Firma b) Sitz, Niederlassung, Zweigniederlassungen c) Gegenstand des Unternehmens | Grund- oder Stammkapital | a) Allgemeine Vertretungsregelung b) Vorstand, Leitungsorgan, geschäftsführende Direktoren, persönlich haftende Gesellschafter, Geschäftsführer, Vertretungsberechtigte und besondere Vertretungsbefugnis | Prokura | a) Rechtsform, Beginn, Satzung oder Gesellschaftsvertrag b) sonstige Rechtsverhältnisse | a) Tag der Eintragung b) Bemerkungen |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |

Hamburg, 13.11.2007
Der Ausdruck bezeugt den Inhalt des Handelsregisters
Heil, Justizobersekretär
Urkundsbeamter der Geschäftsstelle



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PORTLAND
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Anne Lutz, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the document: "Company Articles" from German into English

_____
Signature

Sworn to before me this
March 27, 2008

_____
Signature, Notary Public

Katharine L Perekslis
Notary Public, State of New York
No. 01PE6181423
Qualified in QUEENS County
Commission Expires Jan 28, 2012

_____
Stamp, Notary Public

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM

# Exhibit 2

mv joudi / Tom Shipping Vermitlung, gmbh  cp dd 08/02/08
=========================================

M/V "JOUDI"
==========
EX  HENG TONG IOLCOS LEGEND-SOUTH GATE-JASMIN
MALTA FLAG, BLT 05/1980 LOGGER TYPE BULKCARRIER
35,295 MTS DWAT ON 10.910M SS
LOA: 177.027M  BEAM: 32.272M  TPC:46.00
DEPTH MLD: 15.164M   CONSTANT: 350MTS EXCL FW
GRT/NRT: 21,386 / 11,835
5 HOHA 5 X 20TS SINGLE BOOM DRCKS, THOMPSON TYPE
GEAR LOCATION: N1- FORE OF HA
TCH 1/ N2- AFT OF 2/
N3 F3/N4-A4/  N5-F5
GEAR OUT-REACH (REGISTER): 5M / MAX ABT: 6.2M
CARGO GOING CYCLE: 180.4 SEC/CYCLE
HATCH SIZE 1-5: 13.87 X 16.13M MC GREGOR/ KVAERNER TYPE
  CUBIC CAPACITIES
  ---------------- (MAIN HOLDS+HATCHES)
       GRAIN        BALE
  1)  266,512      261,458
  2)  328,698      322,402
  3)  334,345      327,935

  4)  331,601      325,248
  5)  303,893      298,091
      -------      -------
    1,565,049    1,535,134

STRENGTH: TANK TOP: 16.00MT/M2 H.CVRS: 2.00MT/M2
M.DECK: 3.59 MT/M2
DISTANCES WLTHC (OPEN CONDITION):
1) FULLY LADEN  :  6.49 M
2) LIGHT BALLAST: 12.10 M
3) HEAVY BALLAST: 10.40 M (NO3.HOLD FLOODED)

BUNKER CAPACITIES: 1,740 MT IFO - 225 MT MDO
CLASS: NKK   P+I: SOUTH OF ENGLAND

1) VESSEL FLAG/PORT OF REGISTRY: PANAMA
2) BUILT WHEN (MONTH/YEAR), WHERE: MAY/1980, HYUNDAI / S.KOREA
3) SINGLE DECK, SELF TRIMMING LOGGER TYPE BULK
   CARRIER, SUITABLE FOR GRAB DISCHARGE
4) CLASS / NKK

- ACCT TOM SHIPPING VERMITLUNG, GMBH, GERMANY
- ALL SUBS LIFTED
- 30,000 MT 5 PCT MOLOO GTSP (GRANULAR TRIPPLE SUPER PHOSPHATE)TO BE LOADED AS
  SOLE  CARGO IN MAIN HOLDS ONLY
- 1-2SB(S) SELAATA / 1-2SB(S)1 SP IRAN IN CHOPT (INT B.ABBAS/BIK)
- LAY/CAN 20/24 FEB 2008 WITH MIN 10 DAYS NOTICE OF ETA
- LOAD/DISCH: 2,500 MT SATNOON /MON 08 SHEX UU / 3,000 MT THUR AFT/SAT 08
  FHEX EIU
- FRT USD 79.00  PMT FIOST BSS 1/1 PAYABLE WTHN 5 WD -BUT IN ANY CASE BBB-

  OF S/R CLEAN ON BOARD BS/L
- DEMURRAGE USD 30,000 HDATSBENDS
- GRABS HIRE, IF REQUIRED TO BE FOR CHARTS' ACCT
- SHIPS GEAR CAN PROVIDE SUFFICIENT ELECTRIC POWER FOR GRABS AND EQUIPMENT FOR
  MECHANICAL/ELECTRO-HYDRAULIC GRABS
- WAR RISK INSURANCE, IF ANY, TO BE FOR OWNS' ACCT
- ARB/GA LONDON
- OWNERS AGENTS AT LOAPORT - CHARTS' AGENTS DISPORT - OVERSEAS SHIPPING
AGENCIES
  (TO BE COMPETITIVE - AGENCY FEE TO BE CHARGED AS PER USUAL PORT TARIFF)
- CP DTLS ON CHARTS GENCON CP 22-1-08
- 2.5 PCT TTL YR END + 1.25 PCT SEA CHALLENGER - LONDON


C/P DETAILS AND ALTERTIONS
==========================
charts proforma cp dtd 22-1-08 which to be logically amended as per main terms agreed and with the
following alterations:-

main body
=========

part I
======
3.    plse insert full style of owners
4.    insert as perm/terms
5.    insert MV JOUDI
6.    GT/NT - please advise
7.    as per m/terms
8.    please advise
9.    as per m/terms
10- 26 amend as per negos

PART II
=======

CL 14 : AS PER RECAP AND AS PER LAST LINE CL 21.


RIDER CLAUSES AND ALTERATIONS
=============================

CL 20 : AMEND SHIPS CBM CLEAR GRAIN SPACE
-----

cl 21 :
------
PARA 1 : LINE 1 DELETE 'IRON ORE FINES"
         INSERT "BULK FERTS GTSP".

line 6 after cable delete 'shinc' and insert 'during ordinary office hours on a
         working day. if nor is tendered by vessel before 12:00 local
         time, laytime shall commence to count from 13:00 local time same day. if
         nor is tendered by vessel after 12:00 local time, then laytime shall
         commence to count from 0700 next working day .

line 6 delete from laytime till end of sentence  and insert
      'time from noon sat to 08:00 monday (or local equivalent) and from 17:00
      day preceding a holiday till 08:00 next working day following a holiday
      not to count unless used. if used only actual time used to count.'

para 3 : 12 hours (as turntime) delete in full

PARA 4 : LINE 1 DELETE "JM BAXI"
      LINE 2 DELETE 'HALDIA"
      LAST LINE AFTER CHARERERS AGENT INSERT "PDA AND AGENCY FEE MUST BE
      COMPETITIVE AND CHARGES AS PER USUAL PORT TARIFF"


cls 22 :
--------
line 3 : delete 'shinc on' insert 'during ordinary office hours
      on a working day. if nor is accepted before 12:00 local time, laytime
      shall commence to count from 17:00 local time same day.  if nor
      accepted after 12:00 local time, then laytime shall commence to count
      at 08:00 next working day .

line 4 : delete from 'laytime' till end of sentence' and insert
      'time from noon thur to 08:00 saturday and from 17:00 day preceding a
      holiday till 08:00 next working day following a holiday not to count
      even if used.'

para 2 : 12 hours (as turntime)  delete in full


CL 23 :
------
para 1-4: to be amended as per m/terms
para 6  : line 2 del'shore crane if any at discharge port to be for charts'
      account' line 3 after' loading' insert and 'discharging'
para 9  : replace iron ore fine ' with 'granular triple super phosphate'


CL 24 : DELETE 30 DAYS 'INSERT '15 DAYS'
-----


CL 25 : RETAIN AS PER CP 'FIRST OPENING AND LAST CLOSING"
-----


CL 29 :
-----

'at loading and discharging ports , all dues, taxes on cargo to be for
charterers' account. all dues, taxes, wharfages on vessel a/o freight to be for owners' account, incl custom
charges, freight tax, canal dues, pilotage fees, entrance/clearance fees, dockage fees/dues/charges, port
handling and all other port charges customarily charged to the vessel.

cls 31:
-------
please insert 'should original bills of lading not be available in time for  vessel's arrival at discharging
ports(s), owners agree to discharge and release the cargo against charterers letter of indemnity, worded
as per owners' P+I club's requirements and signed by charterers only'

AND CHRTRS TO SEND COPY OF B/L ISSUED TOGETHER WITH LOI BY FAX FOR OWNERS
APPRVL, FAILING WHICH APPRVL WILL BE WITHHELD AND ALL TIME LOST FOR CHRTRS
ACCNT" (IN ALTERATION)

cls 38:
=======
para 2 :

delete and insert 'master "OR OWNERS"to cable/fax / email to charterers, shippers and loadport agents
notice of arrival on fixing plus 10/7/5 days approximate and 3/2/1/ days definite notice of ETA loadport.

master "OR OWNERS"to cable / fax / email to charterers, receivers  and disport agents notice of arrival
on sailing, 10/7/5 days approximate and 3/2/1 days definite notice od ETA disport.

cls 41:
------- insert vessel's description

CL 42:
------
INSERT AFTER FREIGHT PAYMENT 'AND CONFIRM RECEIVED BY OWNERS BANK"
DELETE LAST PARA 'IF FREIGHT BENEFICIARY  ...UNTIL END OF PARA REMITTING FREIGHT"

cls 46 : delete (as duplicate)
------

cls 46 : owners guarantee vessel is not balck listed by Arab boycott office
------

cls 47 :
-------
Owners guarantee that vessels derricks are working properly.
Stoppages, if any, to be for Owners time + expenses. In case of gear
deficiency owners to hire shore crane, and loading rate to become according
to actual rate that shore crane can achieve.

=END=

thanks&b.regards.

George Lemos
Dir Tel: +44 (0)20 7758 3488
After Office Contact: +44 (0)7785 376662

Sea Challenger Maritime Limited is registered in England, number: 3571833. The registered office is 19
Cornerways,  1 Daylesford Avenue, London SW15 5QP

Copyright published by The Baltic And International Maritime Conference (BIMCO), Copenhagen

| 1. Shipbroker | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>(To be used for trades for which no specially approved form is in force.<br>CODE NAME : "GENCON"   Part I |
|---|---|
| | 2.  Place and date<br>     22 JANUARY 2008 |
| 3.  Owners/ Place of business (Cl. 1) | 4.  Charterers / Place of business (Cl. 1) |
| 5.  Vessel's name (Cl. 1) | 6.  GT / NT (Cl.1.) |
| 7.  DWT all told on summer load line in metric tons (abt) (Cl. 1)<br>     43369 | 8.  Present position (Cl. 1) |
| 9.  Expected ready to load (abt) (Cl. 1.)<br>20-30 JANUARY 2008 ( it will be narrowed later ) | |
| 10.  Loading port or place (Cl. 1)<br>2sp 1/2 SA 1sb Haldia + 1sb Paradip or Vizag , where Charterers confirm<br>2nd load port min 11.70 MTRS SW departure draft AAAA | 11.  Discharging port or place (Cl. 1)<br>1SPB main port - N china/c.china/s china, where Charterers confirm min 11.70<br>MTRS SW arrival draft AAAA. River ports are excluded |
| 12.  Cargo (also state quantity and margin in Owners' option, if agreed: if full and complete cargo not agreed state "part cargo" (Cl. 1)<br>40000 mt 10% MOLOO Iron ore in Bulk. | |
| 13.  Freight rate (also state whether freight prepaid or payable on delivery)<br>                                                                                            (Cl.4)<br><br>USD         PMT FIOST basis 2/1 for S. China upto xiamen<br>USD         PMT FIOST basis 2/1 for C. China upto Shanghai<br>USD         PMT FIOST basis 2/1 for N. China above shanghai | 14.  Freight payment (state currency and method of payment: also<br>                        beneficiary and bank account) (Cl. 4)<br>AS PER RIDER CLAUSE |
| 15.  State if vessel's cargo handling gear shall not be used (Cl. 5)<br>SEE CLAUSE -23 | 16.  Laytime (if separate laytime for load and disch is agreed, fill in a)<br>       and b). If total laytime for load and disch., fill in c) only) (Cl.6) |
| 17.  Shipper/Place of business (Cl. 6) | a)  Laytime for loading<br>- SEE CLAUSE -23 |
| 18.  Agents (loading) (Cl. 6)<br>OWNERS AGENTS LOAD PORT - | b)  Laytime for discharging<br>- SEE CLAUSE -23 |
| 19.  Agents (discharging) (Cl. 6)<br>OWNERS NOMINAED AGENT | c)  Total laytime for loading and discharging |
| 20.  Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br><br>USD | 21.  Canceling date (Cl. 9)<br>30 JANUARY |
| | 22.  General Average to be adjusted at (Cl. 12) |
| 23.  Freight Tax (state it for the Owners' account (Cl. 13 (c)) | 24.  Brokerage commission and to whom payable (Cl. 15)<br><br>5 PCT IAC on freight only |
| 25.  Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c)<br>agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply)<br>(Cl. 19)   ARBITRATION IN LONDON AND ENGLISH LAW TO APPLY | 26.  Additional clauses covering special provision, if agreed |
| (a)State maximum amount for small claims/ shortened arbitration (Cl. 19) | |

It is mutually agreed that this contract shall be performed subject to the conditions contained in this Charter which shall include part I well as part II . In the event of a conflict of conditions, the provision of part I shall prevail over those of part II to the extent of such conflict

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

Printed and sold by Fr. G. Knudtzon Ltd., 55 Toldbodgade, DK-1253 Copenhagen K, Telefax +45 33 93 11 84 by authority of The Baltic and Maritime Council (BIMCO), Copenhagen

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9, and the party mentioned as the Charterers in Box 4 that:
The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk and responsibility) as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bill(s) of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo

2. **Owners' Responsibility Clause**
The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by personal want of due diligence on part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager
And the Owners are not responsible for loss, damage or delay arising from any other cause whatsoever, even from the neglect or default of the Owners or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever

3. **Deviation Clause**
The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life and/or property. BUT OWNERS/MASTER TO CABLE CHRTRS IMMEDIATELY OF SUCH AN EVENT.

4. **Payment of Freight - SEE RIDERS**
(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken quantity of cargo.
(b) Prepaid. If according to Box 13 freight is to be paid on shipment, it shall be deemed earned and non-returnable, Vessel and/or cargo lost or not lost. Neither the Owners nor their agents shall be required to sign or endorse bills of Lading showing freight prepaid unless the freight due to the Owners has actually been paid.
(c) On delivery. If according to Box 13 freight, or part thereof, is payable at destination, it shall not be deemed earned until the cargo is thus delivered. Notwithstanding the provisions under (a), if freight or part thereof is payable on delivery of the cargo the Charterers shall have the option of paying the freight on delivered weight/quantity provided such option is declared before breaking bulk and the weight/quantity can be ascertained by official weighing machine, joint draft survey or tally.
Cash for Vessel's ordinary disbursements at the port of loading to be advanced by the Charterers, if required, at highest current rate of exchange, subject to two (2) per cent to cover insurance and other expenses.

5. **Loading/Discharging Costs**
(a) Costs/Risks - SEE RIDERS
The cargo shall be brought into the holds, loaded, stowed and/or trimmed, taken, lashed and/or secured and taken from the holds and discharged by the Charterers, free of any risk, liability and expense whatsoever to the Owners. The Charterers shall provide and lay all dunnage material as required for the proper stowage and protection of the cargo on board, the Owners allowing the use of all dunnage available on board. The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed.
(b) Cargo Handling Gear
Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power - pro rata the total number of cranes/winches required at that time for the loading/discharging of cargo under this Charter Party - shall not count as laytime or time on demurrage.
On request the Owners shall provide free of charge cranemen/winchmen from the crew to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in which latter event shore labourers shall be for the account of the Charterers. Cranemen/winchmen shall be under the Charterers' risk and responsibility and as stevedores to be deemed as their servants but shall always work under the supervision of the Master.
(c) Stevedore Damage
The Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be held responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability.
The Charterers are obliged to repair any stevedore damage prior to completion of the voyage, but must repair stevedore damage affecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of the Charterers and any time lost shall be for the account of and shall be paid to the Owners by the Charterers at the demurrage rate.

6. **Laytime - SEE RIDERS**
*(a) Separate laytime for loading and discharging
The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
* (b) Total laytime for loading and discharging
The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
(c) Commencement of laytime (loading and discharging)
Laytime for loading and discharging shall commence at 13.00 hours, if notice of readiness is given up to and including 12.00 hours, and at 06.00 hours next working day if notice given during office hours after 12.00 hours. Notice of readiness at loading port to be given to the Shippers named in Box 17 or if not named, to the Charterers or their agents named in Box 18. Notice of readiness at the discharging port to be given to the Receivers or, if not known, to the Charterers or their agents named in Box 19.
If the loading/discharging berth is not available on the Vessel's arrival at or off the port of loading/discharging, the Vessel shall be entitled to give notice of readiness within ordinary office hours on arrival there, whether in free pratique or not, whether customs cleared or not. Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading/ discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading/ discharging berth shall not count as laytime.
If, after inspection, the Vessel is found not to be ready in all respects to load/ discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as laytime

Time used before commencement of laytime shall NOT count.

* Indicate alternative (a) or (b) as agreed in Box 16.

7. **Demurrage - SEE RIDERS**
Demurrage at the loading and discharging port is payable by the Charterers at the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for any part of a day. Demurrage shall fall due day by day and shall be payable upon receipt of the Owners' invoice.
In the event the demurrage is not paid in accordance with the above, the Owners shall give the Charterers 96 running hours written notice to rectify the failure. If the demurrage is not paid at the expiration of this time limit and if the Vessel is now at the loading port, the Owners are entitled at any time to terminate the Charter Party and claim damages for any losses caused thereby.

8. **Lien Clause**
The Owners shall have a lien on the cargo for freight and all sub-freight payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

9. **Cancelling Clause**
(a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in Box 21, the Charterers have the option of cancelling this Charter Party
(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date.
Such option must be declared by the Charterers within 48 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option of cancelling, then this Charter Party is deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date.
The provisions of sub-clause (b) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this Clause.

10. **Bill(s) of Lading - SEE RIDERS**
Bill(s) of Lading shall be presented and signed by the Master as per the "Congenbill" Bill(s) of Lading form, Edition 1994, without prejudice to this Charter Party or by the Owners' agents provided written authority has been given by the Owners to the agents, a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the signing of Bill(s) of Lading as presented to the extent that the terms or contents of such Bill(s) of Lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party.

11. **Both-to-Blame Collision Clause**
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

12. General Average and New Jason Clause

General Average shall be adjusted in London unless otherwise agreed in Box 22 according to York-Antwerp Rules 1994 and any subsequent modification thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2).

If General Average is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Owners are not responsible, by statute, contract or otherwise, the cargo shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving Vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving Vessel or Vessels belonged to strangers. Such deposit as the Owners, or their agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Owners before delivery."

13. Taxes and Dues Clause – SEE RIDERS

(a) On Vessel – The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.

(b) On cargo – The Charterers shall pay all dues, charges and taxes customarily levied on the cargo, howsoever the amount thereof may be assessed.

(c) On freight – Unless otherwise agreed in Box 23, taxes levied on the freight shall be for the Charterers' account.

14. Agency

In every case the Owners TO shall appoint AND EMPLOY his own Agent NOMINATED BY CHRTRS both at the port of loading and the port of discharging.

15. Brokerage

A brokerage commission at the rate stated in Box 24 on the freight, deadfreight and demurrage earned is due to the party mentioned in Box 24.

In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight to be paid by the party responsible for such non-execution to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be agreed.

16. General Strike Clause

(a) If there is a strike or lock-out affecting or preventing the actual loading of the cargo, or any part of it, when Vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, the Master or the Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless the Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, the Owners shall have the option of cancelling this Charter Party. If part cargo has already been loaded, the Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.

(b) If there is a strike or lock-out affecting or preventing the actual discharging of the cargo on or after Vessel's arrival at or off port of discharge and same has not been settled within 48 hours, the Charterers shall have the option of keeping the Vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging until the strike or lock-out terminates and thereafter full demurrage shall be payable until the completion of discharging, or of ordering the Vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after the Master or the Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of the Charter Party and of the Bill(s) of Lading shall apply and Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

(c) Except for the obligations described above, neither the Charterers nor the Owners shall be responsible for the consequences of any strikes or lock-outs preventing or affecting the actual loading or discharging of the cargo.

17. War Risks ("Voywar 1993")

(1) For the purpose of this Clause, the words:

(a) The "Owners" shall include the shipowners, bareboat Charterers, disponent Owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all Vessels or imposed selectively against Vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(2) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may

expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and, if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In the event that the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(5) The Vessel shall have liberty:

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;

(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel where there is reason to believe that they may be subject to internment, imprisonment or other sanctions;

(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

18. General Ice Clause

Port of loading

(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is ready to proceed from her last port or at any time during the voyage or on Vessel's arrival or in case frost sets in after Vessel's arrival, the Master be at liberty to leave without cargo, and in such case this Charter Party shall be null and void.

(b) If during loading the Master, for fear of Vessel being frozen in, deems it advisable to leave, he has liberty to do so with such cargo as he has on board and to proceed to any other port or ports with option of completing cargo for the Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per this Charter Party.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or the Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless Charterers agree to load full cargo at the open port.

This Charter Party is a computer and precise generated copy of the original GENCON (as revised 1922, 1976 and 1994) form, which can be modified, revised or added to only by the striking out of original characters by the insertion of new characters, such characters being clearly highlighted by underlining, use of colour or use of larger font and marked as having been made by the Broker of and were as appropriate and not by the other.

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

|  |  |
|---|---|
| Port of discharge | 366 |
| (a) Should ice prevent Vessel from reaching port of discharge the | 367 |
| Charterers shall have the option of keeping Vessel waiting until the re- | 368 |
| opening of navigation and paying demurrage, or ordering the Vessel to a safe | 369 |
| and immediately accessible port where she can safely discharge without risk of | 370 |
| detention by ice. Such orders to be given within 48 hours after the Master or the | 371 |
| Owners have given notice to Charterers of the impossibility of reaching port | 372 |
| of destination. | 373 |
| (b) If during discharging the Master for fear of Vessel being frozen in deems | 374 |
| it advisable to leave, he has liberty to do so with what cargo he has on board and | 375 |
| to proceed to the nearest accessible port where she can safely discharge. | 376 |
| (c) On delivery of the cargo at such port, all conditions of the Bill(s) of Lading shall | 377 |
| apply and Vessel shall receive the same freight as if she had discharged at | 378 |
| the original port of destination, except that if the distance of the substituted port | 379 |
| exceeds 100 nautical miles, the freight on the cargo delivered at the substituted | 380 |
| port to be increased in proportion. | 381 |

| | | |
|---|---|---|
| 19. | Law and Arbitration | 382 |
| | (a) This Charter Party shall be governed by and construed in accordance with | 383 |
| | English law and any dispute arising out of this Charter Party shall be referred to | 384 |
| | arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or | 385 |
| | any statutory modification or re-enactment thereof for the time being in force | 386 |
| | Unless the parties agree upon a sole arbitrator, one arbitrator shall be | 387 |
| | appointed by each party and the arbitrators so appointed shall appoint a third | 388 |
| | arbitrator, the decision of the three-man tribunal thus constituted or any two of | 389 |
| | them, shall be final. On the receipt by one party of the nomination in writing of | 390 |
| | the other party's arbitrator, that party shall appoint their arbitrator within | 391 |
| | fourteen days, failing which the decision of the single arbitrator appointed shall | 392 |
| | be final. | 393 |
| | For disputes where the total claimed by either party does not exceed the | 394 |
| | amount stated in Box 25** the arbitration shall be conducted in accordance | 395 |
| | with the Small Claims Procedure of the London Maritime Arbitrators | 396 |
| | Association. | 397 |
| | (b) This Charter Party shall be governed by and construed in accordance with | 398 |
| | Title 9 of the United States Code and the Maritime Law of the United States and | 399 |
| | should any dispute arise out of this Charter Party, the matter in dispute shall be | 400 |
| | referred to three persons at New York, one to be appointed by each of the | 401 |
| | parties hereto, and the third by the two so chosen; their decision or that of any | 402 |
| | two of them shall be final, and for purpose of enforcing any award, this | 403 |
| | agreement may be made a rule of the Court. The proceedings shall be | 404 |
| | conducted in accordance with the rules of the Society of Maritime Arbitrators, | 405 |
| | Inc.. | 406 |
| | For disputes where the total amount claimed by either party does not exceed | 407 |
| | the amount stated in Box 25** the arbitration shall be conducted in accordance | 408 |
| | with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, | 409 |
| | Inc. | 410 |
| | (c) Any dispute arising out of this Charter Party shall be referred to arbitration at | 411 |
| | the place indicated in Box 25, subject to the procedures applicable there. The | 412 |
| | laws of the place indicated in Box 25 shall govern this Charter Party. | 413 |
| | (d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply | 414 |
| | (a), (b) and (c) are alternatives; indicate alternative agreed in Box 25 | 415 |
| | Where no figure is supplied in Box 25 in Part I, this provision only shall be void but | 416 |
| | the other provisions of this Clause shall have full force and remain in effect. | 417 |

This Charter Party is a computer generated copy of the original GENCON (as revised 1922, 1976 and 1994) form, which can be modified, amended or added to only by the striking out of original characters or the insertion of new characters, such characters being clearly highlighted by underlining, use of colour or use of larger font and marked as having been made by the licensor and not as an appropriate and/or by the author

**CLAUSE 20**
Owners guarantee 52650 cbm clear grain space being clean available and suitable for the intended cargo in bulk. This grain space is guaranteed by Owners to be easily accessible.

**CLAUSE 21**
NOR/LAYTIME AT LOADPORT:-
At Loadports, master/agents to serve NOR after vessel's arrival at customary waiting anchorage of the designated load ports with cargo holds / hatches covers dry and clean, free from previous cargo and fit in all respects to receive the bulk iron ore fines as certified by Independent surveyors appointed by the Charterers and NOR to be tendered by fax / e-mail / cable SHINC . WIPON / WIBON / WICCON / WIFPON. Laytime to count as per Gencon ( 13.00 Hrs if NOR tendered before noon and 09.00 Hrs next working day if NOR tendered afternoon unless sooner commenced.)

If hatches upon inspection found unclean, master to clean the hatches to the satisfaction of the surveyors and time from rejected until passed again not to count as laytime.

12 hours (as turn time) after notice of readiness which to be tendered any time day night Sundays holidays included / Fridays holidays included . (7 days a week include holidays) at both ends

Owners agent load ports,jm baxi who must work very closely with charterers/shippers to ensure immediate berthing at haldia and responsible for quick despatch of vessel.
Charterers agent disport.

**CLAUSE 22**
NOR/LAYTIME AT DISCHARGE PORT:
Master/agents to serve NOR after vessel's arrival at customary waiting anchorage of the designated discharge port  and NOR to be tendered by fax / e-mail / cable on shinc WIPON / WIBON / WICCON / WIFPON. Laytime to count as per Gencon ( 13.00 Hrs if NOR tendered before noon and 09.00 Hrs next working day if NOR tendered afternoon unless sooner commenced.)

12 hours (as turn time) after notice of readiness which to be tendered any time day night Sundays holidays included / Fridays holidays included . (7 days a week include holidays) at both ends

**CLAUSE 23**
LOAD /DISCHARGE TERMS

At Haldia and anchorage :- Cargo to be loaded at the rate of 7000 MT per weather working day Sunday holiday included unless used basis 4 X 25 Ts Cranes  SWL capacity  prorata if less.

At Paradip ;- Cargo to be loaded at the rate of 7000 MT per weather working day Sunday holiday included unless used  basis 4 X 25 Ts Cranes  SWL capacity  prorata if less.

At Vizag ;- Cargo to be loaded at the rate of 7000 MT per weather working day Sunday holiday included unless used  basis 4 X 25 Ts Cranes  SWL capacity  prorata if less.

At discharge port : Cargo to be discharged at the rate of 10000 MT per weather working day Sunday holiday included

Laytime non-reversible between load and discharge port.

Any grabs time and hire ( if any ) to be at Charterers  account / responsibility at both ends. Shore crane if any at discharge port to be chrtrs account . Understand loading take place by Ship's crane, however, only in case of ship's crane breakdown then Shore crane to be used on Owners account sub to same to be ordered by Master of sub vsl.

Any trimming required in excess of what can be possible with the grabs is to be for owners account and time, owners to provide all equipment and crew as on board to facilitate the loading/discharging operations. Provided port regulation permit, if berthing, loading discharging is prevented or delayed by or as a consequence of the terms and conditions of such prevention or delay and the owners shall reimburse charterers / shippers / receivers for any proven damages and / or directly related expenses caused thereby. Time lost for draft survey to be shared equally between Owners and Charterers at both ends

Waiting for berth due to port congestion to count as Laytime. Waiting for tide to shift from waiting anchorage to berth not to count as laytime. Waiting for tide to haul out / or to sail from first load port to second load port not to count as laytime. Shifting between first load port berth to anchorage and/ or anchorage to anchorage , port to port owners a/c and time. If any additional shifting ordered by chrtrs , same to be chrtrs a/c and time."

Owners confirm that vessel is suitable in all respects for carrying Iron Ore Fines.

Owners confirm that vessel's cranes are compatible for grabs loading/discharge.

Shore cranes if used due to ship cranesbreak down, shall be on owners cost/account subject to be ordered by Master. Vessel must supply adequate power to all grabs (Max 4 cranes and Grabs simultaneously) ( Power required for usage of hydraulic grabs 440 volts each) Time lost if any due to power shortage  will be counted on owners a/c. If owners employ the generator to make grab working, then time to be counted in full. Time lost in employing generator not to count as lay time..

Quantity  of cargo to be ascertained as per joint draft survey which time/cost of such survey time/cost of such operation to be shared equally between owners and charterers both ends.

The vessel is to be loaded / stowed by the Charterers but master to be responsible for stowage and supervision.

Charterers shall not be liable for any delay in loading and / or discharging caused in whole or part by act of God, political disturbances, rebellion, mobilization, revolution, insurrection, acts of public enemy, strike, riots and civil commotion, sabotage, fire, floods, earthquake, act of Govt. of any other cause comprehended in the force majure.

**CLAUSE 24**
DEMURRAGE / DISPATCH

Demurrage if incurred will be at the rate of USD 30000 per day prorata / Half Despatch Working (or Weather) Time Saved both ends and same to be settled within 30 days after completion of discharge and true and rightful delivery of cargo to the receiver delivery and receipt of relevant documents such as SOF and NOR etc. for both load and discharge ports duly signed by shipper (load port) and receiver (discharge port) or their agents respectively.

**CLAUSE 25**
Vessel has hatch covers complete in good operational condition. First opening and last closing of hatches, including removal and lifting of hatch beams and rigging of gears to be performed by ship's crew at Owners risk expense and time, provided local authorities permit it.

**CLAUSE 26**
The stevedores although appointed and paid by Charterers, shippers or receivers or their agents are to be regarded for as the servants of the Owners and to remain under the direction and control of the master, who will be responsible for proper loading, stowage, discharging, stability, trim and the seaworthiness of the vessel. If stevedores not permitted to work by port authority due to failure of the master/owners to comply, with local port regulations Laytime not to count until permitted.

Charterers not liable for any stevedores or third party damage to and by vessel except stevedore damage to vessel . Stevedores damages if any to be directly settled between master and stevedores at load and discharge ports. In case master not able to settle his claim directly with stevedores then Charterers to assist owners best possible in settlement of such claim. However charterers shall remain responsible for settlement of such damage.

Master to give written notice of any damage to Charterers/ receivers or their agents within 24 hours of such occurrence but certainly prior to departure from the port, failure of which will render the claim non-existent / expired.

## CLAUSE 27
The vessel is to work day and night including Saturday afternoon, Sundays and holidays as required by the Charterers or their agents giving free use of vessel gears, winches power on board. Vessel is also to supply light for night work as on board to carry out loading / discharging operations.

## CLAUSE 28
Overtime to the account of the party ordering it. Ship officers and crew overtime to be always for Owners account.

## CLAUSE 29
OAP- Over Age Premium due to vessel age if any on cargo insurance by shipper to be for Charterers account.

## CLAUSE 30
Lighterage if any to be for Charterers time and account bends.

## CLAUSE 31

## CLAUSE 32
The owners guarantee that the vessel is entered with a first class PNI club and to maintain full PNI coverage for the duration of this fixture.
Copies of certificates to be provided to Charterers prior loading such as .
   a.  PNI Club
   b.  Hull & Machinery Certificate
   c.  ISPS
   d.  Class certificate
   e.  Certificate of registry etc ...

## CLAUSE 33
Bimco ISM clause incorporated in cp / Bimco ISPS clause incorporated in cp

Bimco double banking clause to apply for anchorage loading operations if any.
Bimco double banking clause to apply for anchorage.

## CLAUSE 34

1) Owners confirm that vessel has full insurance to cover for compensation in relation to Wreck removal expenses and Pollution damage caused by spillage of oil or any hazardous and noxious substances from a protection and indemnity (P&I) which is a member of an international group of P&I club or a club duly approved by the govt. of India.

2) Owners warrant vessel has a valid IOPP certificate.

Owners confirm vessel has full P&I cover for the duration of the c/p.

Owners confirm they are familiar with the hold/hatch/hatch cover condition requirements applying for the loading/carriage/discharge of iron ore fines.

Owners confirm they are aware of the strict cleanliness/hold/hatch cover condition requirements applying for the loading of bulk iron ore fines.

3) owners warrant vsl is and will be maintained sd/gc, steel floored, suitable for grab/pipe load / disch;-tight/staunch and in every way suitable to perform the voyage;

absolutely weather tight complying with all rules and regulations at load/discharge ports in terms of load/carriage/discharge of Iron Ore Fines in bulk and has on board all relevant certificates equipped with hatches which are in proper working order.

4) Owners warrant vsl has no centre line beams or bulkheads or obstructions in holds.

Owners confirm vessel has no log stanchions, pillars or other obstructions.

5) Vessel will not change name/flag/class/ownership or P&I club during the currency of this c/p w/o charterers' prior written consent;

6) Vessel/owners have no outstanding judgments /arrest order, encumbrances, liens or claims pending against them.

7) Vessel has not been detained within the last 6 months

## CLAUSE 35

Nothing herein stated is to be construed as a demise of the vessel to the Charterers. The Owners to remain responsible for the navigation of the vessel, personal injury and cargo claim to the extent that the full and complete cargo as loaded is delivered safely at the discharge port.

## CLAUSE 36

This Fixture to be treated private and confidential and not to be reported to any third party.

This fixture is independent of any other fixture of any vessels directly or indirectly connected between owners / disponent owners/managers / operators and Charterers and that no any outstanding claims if pending thereon shall have any bearing on this fixture.

## CLAUSE 37

New Jason Clause, New both to blame collision clause, P & I Bunkering clause, General Paramount, York Antwerp rules 1974, BIMCO ISM clauses are deemed to be incorporated in this charter party.

**CLAUSE 38**
Notices: Upon completion of loading, owners to provide time frame by which vessel would arrive at discharge port for discharging cargo from the date of sailing from loadport.

Master/owners to cable / fax / email to Charterers / shippers and Loadport agents on fixing and due to vessel ETA first load port which is by 25 january 2008, hence pre advise notices to be given basis 5/3/2 and definite 24 hours at Load port as per vessel location and circumstances and on sailing from Load port 7/5/3/2 days approx and 48/24 hours definite ETA notices disport both to discharging port Owners agents and to Charterers / receivers.

**CLAUSE 39**
Owners agree not to load any other cargo under / over deck and vessel to sail directly to the discharge port in geographical shipping route after loading nominated cargo safe for navigational requirements, supplies bunkers requirement and emergencies.

**CLAUSE 40**
Negotiation and fixture to be kept strictly private and confidential by all parties involved.
**CLAUSE 41**

VESSEL DESCRIPTION.

**CLAUSE 42**

FRT PAYMENT:

FREIGHT PAYMENT: 100 pct freight less commission to be deducted and to be paid to owner's nominated bank account within             banking days after completion of loading, signing and releasing full set of original" clean on board " bs/l  marked "freight payable as per charter party." or " freight collect" as the case may be upon loading owners should release freight payable as per charter party bill of lading/s and upon remitting by charterers 100% freight

payment ,owners must immediately release freight prepaid bill of lading if so required by shipper . prior authority must be given by owners and master to charterers nominated agents to sign / release bills of lading on behalf of the master.freightt to be deemed earned upon completion of loading.

non-returnable, non-discountable, vessel n/o cargo lost or not lost, on payment of freight.

Freight to be remitted to owners banking details as follows:

OWNS BANK ACC:

If freight beneficiary is disponent owners or any other party other than head owners then they should provide a letter of authority from head owners favoring freight beneficiary to collect the freight under this charter party. Copy of such authority to be provided to charterers before remitting freight.

CLAUSE 43

## CLAUSE 44

ARBITRATION.

Any dispute under this C/P shall be referred to arbitration in London as per English law. One Arbitrator to be nominated by Owners and other by Charterers. If such arbitrators cannot agree, then dispute has to be referred to the decision of an umpire, who shall be appointed by the said arbitrators. Arbitrators shall be shipping commercial men.

Any charter party dispute must be made in writing within 3 months of final discharge, and where this provision is not complied with the dispute shall be extinguished and cease to exist

## CLAUSE 45

Deleted

CLAUSE 46

Over age premium –  Over age premium to be for charterers account (if any)

\*\*\*\*\*\*\*\*\*\*\*

====================                           ====================
**OWNERS**                                      **CHARTERERS**

# Exhibit 3

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

Anlage Z 1 zur AWV

**ZAHLUNGSAUFTRAG IM AUSSENWIRTSCHAFTSVERKEHR**
Meldung nach §§ 59 ff. der Außenwirtschaftsverordnung (AWV)

Ausfertigung für den
Meldepflichtigen (Kontoinhaber)

| | | |
|---|---|---|
| 52: An Kreditinstitut | Bankleitzahl | Referenz des Kontoinhabers |
| Hamburger Sparkasse AG | 2 0 0 5 0 5 5 0 | |
| Auslandszahlungen | Konto-Nummer des Kontoinhabers/Einzahlers | |
| 20454 Hamburg | 1 2 8 0 2 - 8 7 1 1 9 | |

| Zahlung zu Lasten | 1 = Euro-Konto   2 = Währungskonto | Keine Angabe bedeutet Zahlung zu Lasten des Euro-Kontos | |
|---|---|---|---|
| | | 1 | |

| 32: Währung    Betrag | ZielLand | Version |
|---|---|---|
| USD   2.406.195,00 | | 0 0 0 3 |

50: Name des Kontoinhabers/Einzahlers
TOX Shipping Vermittlung GmbH

Straße
Försterweg 22   C/o Rahimzadeh

| Postleitzahl | Ort |
|---|---|
| 22525 | Hamburg |

| 57: Bank des Begünstigten (bevorzugt als S.W.I.F.T.-Code) | BIC (S.W.I.F.T.-Code)   BOTKSGSX | Ist sowohl ein S.W.I.F.T.-Code als auch Name und Anschrift der Bank ausgefüllt, wird die Zahlung gemäß S.W.I.F.T.-Code ausgeführt |
|---|---|---|

Name des Kreditinstituts
The Bank of Tokyo-Mitsubishi UFJ, Ltd.

Straße
Singapore Branch

Ort/Land

IBAN, w. Konto-Nr. des Begünstigten und Bank-Code (max. 34 Stellen)
USD A/c 186119

59: Name des Begünstigten
Crooklands Planning PTE LTD.

Straße
32 Wallich Street No.02-58

Ort/Land
Singapore 078880

70: Verwendungszweck (nur für Begünstigten)
M/V JOUDI Freight Charges

Zusätzliche Weisungen für das Kreditinstitut (z. B. zum Weisungsschlüssel)

| Ausführungsart (Keine Angabe bedeutet Standard) | Weisungsschlüssel (Weisungen für Kreditinstitut) | 71: Entgeltregelung (Keine Angabe bedeutet Entgeltteilung) | Bei Zahlungen zu Lasten Währungskonto Entgelte zu Lasten |
|---|---|---|---|
| 0 = Standard (S.W.I.F.T.) 1 = Eilig (S.W.I.F.T.) 2 =   Scheckzahlung 3 = Barzahlung an Kontoinhaber | 1 = Avis an Bank des Begünstigten 2 = Telefonavis an den Begünstigten 3 = Telex-/Fax-Avis an den Begünstigten 4 = Zahlung gegen Legitimation | 0 = Entgeltteilung eigenes Entgelt z.L. Kontoinhaber fremdes Entgelt z.L. Begünstigter 1 = alle Entgelte z.L. Kontoinhaber 2 = alle Entgelte z.L. Begünstigter | 1 = Euro-Konto 2 = Währungskonto (Ohne Weisung wird das zu belastende Konto angesprochen) |

**Meldung nach §§ 59 ff. der Außenwirtschaftsverordnung (AWV)**

Befreiungen, Erläuterungen und Leistungsverzeichnis siehe Rückseiten

| Die Zahlung erfolgte für: Ggf. Zahlungsbetrag aufteilen. | 1. Dienstleistungen, Übertragungen, Kapitaltransaktionen | Feder 105-111 ausfüllen. Kennzahlen anhand des Leistungsverzeichnisses angeben. | | 2. Transithandel | Fakt 100 ankreuzen; Meldung auf Vordruck Z 4 einreichen. | 100 |
|---|---|---|---|---|---|---|
| 105: Kennzahl | | 106: Land (Erläuterungen beachten) | Länder-Code | 107: Betrag in o.g. Währung (nur anzugeben bei mehr als einem Zahlungszweck) | | |
| 108: Kennzahl | | 109: Land (Erläuterungen beachten) | Länder-Code | 110: Betrag in o.g. Währung (nur anzugeben bei mehr als einem Zahlungszweck) | | |
| 111: Nähere Angaben zu den zugrunde liegenden Leistungen bzw. zum Grundgeschäft (ggf. mit weiteren Belegen) | | | | | | |

| | Firmennummer | Währung |
|---|---|---|
| | | |

Kontoführung / Sicherungsstempel

| Datum | |
|---|---|
| 1 7 0 3 2 0 0 8 | **Hamburger Sparkasse** |
| Telefon / Durchwahl | **1 7 März 2008** |
| | Filiale 280 |

Unterschrift / Stempel

# Exhibit 4

GESAMTSEITEN 001

Seite 1 von 1

```
- - - - - - - - - - - - - - - - - - - - -
  CAUTION  ---  HARDCOPY  ---  HARDCOPY  ---  HARDCOPY  ---  CAUTION
- - - - - - - - - - - - - - - - - - - - -
```

MT:                     103 (Single Customer Credit Transfer (Straight Through
Processing))
LT:                     HASPDEHHSXXX (HAMBURGER SPARKASSE AG / HAMBURG)
Correspondent:          IRVTUS3NXXXX (BANK OF NEW YORK / NEW YORK,NY)
Priority:               N
TRN:                    20080318/0692
Currency/Amount:        USD/2.406.195
Value Date:             20.03.08
SWIFT ACK:              DNFU8603I
                        (DNFU8603I Authentication successful; home BIC='HASPDEHH';
correspondent BIC='IRVTUS3N'; key='B107052026644152';)

MPS-ID:                 2427652
Status:                 Sent-Messages
User:                   Elke Bendt
Print Time:             18.03.08 15:33:30

```
- - - - Start Of Message - - - -
{1:F01HASPDEHHSXXX0000000000}{2:I103IRVTUS3NXXXXN}{3:{113:XXXX}{108:20080318/
0692}{119:STP}}{4:
:20:20080318/0692
:23B:CRED
:32A:080320USD2406195,
:33B:USD2406195,
:50K:/1280287119
TOM SHIPPING VERMITTLUNG GMBH
C/O MOS OVERSEAS SHIPPING VER
NEUER WALL 8
20354 HAMBURG
:56A:BOTKUS3N
:57A:BOTKSGSXXXX
:59:/USDAC186119
BROOKLANDS PLANNING PTE LTD.
32 WALLICH STREET NO.02-58
SINGAPORE 078880
:70:M/V JOUDI FREIGHT CHARGES
:71A:SHA
- - - - End Of Message - - - - -
```

Hamburger Sparkasse

18. März 2008

Filiale 280

*Document NO. 2*
*Swift of Remittanc*

# Exhibit 5

```
25-MAR-2008  12.48      BASPA FOREIGN DEPARTMENT              --- --- ---
          --- SERVER PRINTOUT --- SERVER PRINTOUT --- SERVER PRINTOUT ---

MT:                MT199 SWIFT Output
LT:                HASPDEHHSXXX
Correspondent:     IRVTUS3NBXXX
Priority:          N
TRN:               CIS0803189438000
Currency/Amount:   /
Value Date:

Last Acting User:
Last Acting Time:
Appl. Queue:

MPS-ID:            2433898
Appl. Status:
Print Time:        20/03/08 15.37.22              Frau Meier

- - - - - - - - - - Start Of Message - - - - - - - - - -
{1:F01HASPDEHHSXXX3930973087}{2:O19910370803201IRVTUS3NBXXX71564656900803201537N
}{3:{108:CIS0803189438000}}{4:
:20:CIS0803189438000
:79:ATTENTION: COMPLIANCE/LEGAL.
OUR REF CIS0803189438000.
REGARDING YOUR SWIFT INSTRUCTIONS NUMBER
FTS0803189237200 DATED 080318, FOR USD
2,406,195.00 VALUE 080320 IN SAME DAY FUNDS BY
ORDER TOM SHIPPING HAMBURG FOR FURTHER CREDIT TO
BANK OF TOKYO-MITSUBISHI UFJ 1251 AVENUE OF THE
AMERICAS NEW YORK, N.Y. 10020-1104 FOR THE ACCOUNT
OF USDAC186119 SINGAPORE REFERENCE 20080318/0692.
PLS BE ADVISED THIS WIRE IS RESTRAINED TO A WRIT
OF MARITIME ATTACHMENT IN DEIULEMAR COMPAGNIA DI
NAVIGAZIONES SPA V, OVERSEAS WORLDWIDE HOLDING
GROUP,GULF OVERSEAS GENERAL TRADING LLC. GULF
OVERSEAS LLC,OVERSEAS SHIPPING AGENCIES, MOS
OVERSEAS SHIPPING VERMITTLUNG GMBH. MAJDPOUR BROS
CUSTOMS CLEARANCE, MAJDPOUR BROS INTERNATIONAL SEA
AND LAND TRANSPORT S.A. AND BORU INTERNATIONAL
FREIGHT FORWARDING. THE ATTORNEYS FOR THE
PLAINTIFF ARE CHALOS, O'CONNOR AND DUFFY, LLP.
THEIR PHONE NUMBER IS 516-767-3600.THE DOCKET
NUMBER IS 07-CV-4655. THE JUDGMENT AMOUNT IS
607,887.52USD.AND HAWKNET LTD., V. OVERSEAS
SHIPPING AGENCIES, OVERSEAS WORLDWIDE HOLDING
GROUP,HOMAY GENERAL TRADING CO. LLC,MAJDPOUR BROS
CUSTOMS CLEARANCE,MAJDPOUR BROS INTERNATIONALSEA
AND LAND TRANSPORT S.A.,GULF OVERSEAS LLC,GULF
OVERSEAS GENERAL TRADING MOS OVERSEAS SHIPPING
VERMITTLUNG GMBH.ATTORNEYS BURKE AND PARSONS.
PHONE NO. 212-354-3815,DOCKET NO. 07-CV-5912,
JUDGMENT AMOUNT 2 ,762,500.00USD.
REGARDS, MICHELLE SEGURA 315-765-4160 , PLEASE
RESPOND TO FTD-BLOCK ENTITY.

- - - - - - - - - End Of Message - - - - - - - - - - - - - - - - - -
```

Document No.
SWIFT message
Received FM
New York.

# Exhibit 6

## Michael O. Hardison

| | |
|---|---|
| **From:** | Carl Buchholz [CBuchholz@rawle.com] |
| **Sent:** | Wednesday, March 26, 2008 3:57 PM |
| **To:** | Michael O. Hardison |
| **Cc:** | Lilian Philiposian |
| **Subject:** | FW: |

**Attachments:**    Document.pdf



Document.pdf (65 KB)

Mike,

As discussed, this wire was stopped because of the reference to "MOS SHIPPING VER" in the ordering customer details of the wire. If you have any other questions, please advise.

Carl

-----Original Message-----
From: Administrator@rawle.com [mailto:Administrator@rawle.com]
Sent: Wednesday, March 26, 2008 1:16 PM
To: Carl Buchholz
Subject:

--------------------------------------------------------------

Please open the attached document.
This document was sent to you using an HP Digital Sender.

    Sent by:                <Administrator@rawle.com>
    Number of pages:        4
    Document type:          B/W Document
    Attachment File Format:    Adobe PDF

To view this document you need to use the Adobe Acrobat Reader. For free copy of the Acrobat reader please visit:

    http://www.adobe.com

For more information on the HP Digital Sender please visit:

    http://www.digitalsender.hp.com
*******************************************************************************************************
*******************

This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not

1

the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.
*************************************************************************************************
*******************

## Lilian Philiposian

**Subject:**  RE: MARITIME ATTACHMENT  MOS OVERSEAS SHIPPING SHIPPING VERMITTLUNG
GMBH ████████ $2,406,195.00

 HAMBURGER       2,406,1  BANK OF              3/20/2  FP    2
SPARKASSE        95.00   TOKYO-MITSUBISHI      008     Y     1
UFJ

```
-------------------------------+-------------------------------
                               |
                               |
  Debit Party                  |   Debit Party Source
PAY                            |   TRN
         FED                   |   1
DB:     ████████               |        ████████
                               |        HASPDEHH
  HAMBURGER SPARKASSE          |
                               |
  POSTFACH 11 1549             |
                               |
  D-20454 HAMBURG, GERMANY     |
                               |
-------------------------------+-------------------------------
                               |
                               |
  Ordering Customer            |   Ordering Customer Source
ORG:                           |   2
                               |        ████████
      ████████                 |   Name:
                               |        TOM SHIPPING VERMITTLUNG
  TOM SHIPPING VERMITTLUNG GMBH|        GMBH
                               |   Addr 1:
  C/O MOS OVERSEAS SHIPPING    |        C/O MOS OVERSEAS
  VER                          |        SHIPPING VER
                               |   Addr 2:
  20354 HAMBURG                |        NEUER WALL 8
                               |   Addr 3:
                               |        20354 HAMBURG
                               |
-------------------------------+-------------------------------
                               |
                               |
  Ordering Bank                |   Ordering Bank Source
OGB:                           |   3
                               |
                               |   Name:
```

```
                                        Addr 2:

                                        Addr 3:

TYP PMT

DR ADV                                  COM 0
           CHG        PTR                        DR AMT2      0      GLA
DB                                      DB
           ********* NONE                        ********* NONE
           *********                             *********
SI                                      SI
```

Credit Party                            Credit Party Source
PAY                                     TRN
      FED
CR:       ██████████                    4

                                                 BOTKUS3N

      BANK OF TOKYO-MITSUBISHI UFJ

      TRUST COMPANY

      1251 AVENUE OF THE AMERICAS

      NEW YORK, N.Y. 10020-1104

Account With Party                      Account With Party Source
BBK:
                                                 BOTKSGSXXXX
                                        5
      BANK OF TOKYO-MITSUBISHI UFJ
      LTD.

      9, RAFFLES PLACE NO. 01-01

      REPUBLIC PLAZA TOWER 1

      SINGAPORE 048619

Beneficiary                             Beneficiary Source
BNF:                                    6
                                        ██████████
                                                 2

```
                    � ████████ ▐          BROOKLANDS PLANNING PTE
                                          LTD.
              BROOKLANDS PLANNING
              PTE LTD.                    32 WALLICH STREET NO.02-58

              32 WALLICH STREET           SINGAPORE 078880
              NO.02-58

              SINGAPORE 078880
MSG TYPE
              ████████
CR ADV
              CHG      PTR          CR
CR                                  
              ********* NONE         SI     ********* NONE *********
              ************
SI
              ** DO NOT CONFUSE
              WITH **

              BANK OF TOKYO
              -MITSUBISHI LTD.

              N.Y. WHICH IS
              ABA/████████
```

------------------------------------------------

```
 Details of Payment                    Details of Payment Source
PAY                                    TRN
       FED                             ████████████
OBI:                                   7

      M/V JOUDI FREIGHT CHARGES            M/V JOUDI FREIGHT CHARGES

                                           SHA
```

------------------------------------------------

```
 Bank to Bank Information              Bank to Bank Information Source
BBI:                                   8
```

3

SWIFT ███ ██████████

████████████████

SWIFT ███

SWIFT ███ SOURCE:

AMT     2,406,195.00

                          FUNDS
                          S
          ASN ██████
          MSG TYPE
          DET OF CHGSSHA

                          ADJ
                          XREF
          STATUS    Wait
          Service

O|

                          T|
                          INSERT
                          :
          D| ORGIN: 2008 /
          03 / 18
              D|

P|

                          I|
          A|
              O|

E|

                          M|
                          VERIFY
                          :
          T| VALUE: 2008 /
          03 / 20
              C|

R|

                          E|
          E|
              S|

S|

                          S| FD
                          RLS:
                          ██████
          S| DRVAL: 2008 /
          03 / 20

# Exhibit 7

# Haspa

**Hamburger Sparkasse**

---

Hamburger Sparkasse • 20454 Hamburg

Postanschrift:
20454 Hamburg

TOM Shipping Vermittlung GmbH
C/O Mr Rahimzadeh
Försterweg 22
22525 Hamburg

Hamburger Sparkasse
20454 Hamburg
Kreditsekretariat
Recht und Abwicklung
Herr Lender
Telefon: 040 3579-7141
Telefax: 040 3579-3875
Unser Zeichen: krs-ra-len
03.04.2008

**Current account no: 1280287119**
**Payment order US-$ 2.406.195,00 per 18.03.2008**

Dear Mr Rahimzadeh,

we herewith confirm that you have handed out the payment order amounting to US-$ 2.406.195,00 stated as follows:

- beneficiary "Brooklands Planning Pte Ltd"
- name and address of payer: "TOM Shipping Vermittlung GmbH C/O Herrn Rahimzadeh, Försterweg 22, 22525 Hamburg"

Additionally we confirm that the following holder of the above mentioned current account and payer concerning the above mentioned payment order is:

"TOM Shipping Vermittlung GmbH C/O Herrn Rahimzadeh, Försterweg 22, 22525 Hamburg"

On the occasion of the opening of the above mentioned account you, Mr Rahimzadeh, were asked for the address of "TOM Shipping Vermittlung GmbH". Maybe you misunderstood the question for the address due to linguistic difficulties and you handed over your business card from your former employer, the "MOS Overseas Shipping Vermittlung GmbH". Following this we copied "C/O MOS Overseas Shipping Vermittlung GmbH, Neuer Wall 8, 20354 Hamburg" into our database.

The account contract dated 29.01.2008 (see attachment) you have signed does not state the address, so the wrong address remained unnoticed. The correct address was copied into our database on the 26.03.2008 after you had handed out the shareholder's agreement.

According to the shareholder's agreement, attested by a German notary, dated 04.09.2007, the business premises of "TOM Shipping Vermittlung GmbH" are: "C/O Mr Rahimzadeh, Försterweg 22, 22525 Hamburg."

Hamburger Sparkasse AG • Sitz Hamburg • Handelsregister Amtsgericht Hamburg • HRB 80 691 • USt-ID-Nr. DE216540952
Zentrale, Ecke Adolphsplatz / Gr. Burstah, gegenüber der Börse, Hamburg • Bankleitzahl 200 505 50
Telefon 040 3579-0 • Telefax 040 3579-3418 • SWIFT-Adresse HASPDEHHXXX • Internet www.haspa.de
Vorsitzender des Aufsichtsrats: Dr. Karl-Joachim Dreyer • Vorstand: Dr. Harald Vogelsang,
Dr. Friedhelm Steinberg, Dr. Wolfgang Botschatzke, Reinhard Klein, Jörg Wohlers



**Haspa**
Hamburger Sparkasse

We do not know of a connection between "TOM Shipping Vermittlung GmbH" and "MOS Overseas Shipping Vermittlung GmbH, Neuer Wall 8, 20354 Hamburg". The Hamburger Sparkasse has got no business relations to "MOS Overseas Shipping Vermittlung GmbH, Neuer Wall 8, 20354 Hamburg".

Yours sincerely

Hamburger Sparkasse

Seite 2 von 2

Hamburger Sparkasse AG • Sitz Hamburg • Handelsregister Amtsgericht Hamburg • HRB 80 691 • USt-ID-Nr. DE216540952
Zentrale, Ecke Adolphsplatz / Gr. Burstah, gegenüber der Börse, Hamburg • Bankleitzahl 200 505 50
Telefon 040 3579-0 • Telefax 040 3579-3418 • SWIFT-Adresse HASPDEHHXXX • Internet www.haspa.de
Vorsitzender des Aufsichtsrats: Dr. Karl-Joachim Dreyer • Vorstand: Dr. Harald Vogelsang,
Dr. Friedhelm Steinberg, Dr. Wolfgang Botschatzke, Reinhard Klein, Jörg Wohlers

Kontonummer:         1280287119
- Blatt-Nr.:          1 von 1



Kontobezeichnung:    TOM Shipping Vermittlung GmbH
Beruf/Wirtschaftszweig:  Vermittlung von See- und Landfrachtgeschäften

Für das obengenannte Konto gelten folgende Zeichnungsbefugnisse

| Vorname, Zuname | Geburtsdatum Eigenschaft | zeichnet | VA |
|---|---|---|---|
| Asadollah Rahimzadeh | 24.04.1932 Geschäftsführer | X A. Rahimzadeh | E |

Sonderverfügungsberechtigung:
nicht vorhanden

29.01.2008          1.                              2.

                                                Meier, Dagmar

Dieses U-Blatt wurde erstellt in          889_Filiale_280

*) VA = Verfügungsart des Zeichnungsberechtigten
. Es zeichnet:  E = einzeln, A = Mit einem anderen Zeichnungsberechtigten gemeinsam, B = mit einem anderen
               Zeichnungsberechtigten zu A gemeinsam, S = Sonderverfügung gemäß Vereinbarung mit Kontoinhaber

Kontonummer:          1280287119
                      - Blatt-Nr.:    1 von 1
Kontobezeichnung:     TOM Shipping Vermittlung GmbH
Beruf/Wirtschaftszweig:  Vermittlung von See- und Landfrachtgeschäften



| Vorname, Zuname | Geburtsdatum | Verfügungseigenschaft | VA*) |
|---|---|---|---|
| 001  Asadpila Rahimzadeh | 24.04.1932 | Geschäftsführer | E |

Sonderverfügungsberechtigung:
nicht vorhanden

29.01.2008        X    A. Rahimzadeh
                  TOM Shipping Vermittlung GmbH

                  **Hamburger Sparkasse**

29.01.2008     1.                              2.
                                                  Meier, Dagmar

Kontonummer:     1280287119



Kontobezeichnung:    **TOM Shipping Vermittlung GmbH**
Beruf/Wirtschaftszweig:  Vermittlung von See- und Landfrachtgeschäften

## Girovertrag mit der Hamburger Sparkasse

**Der/die Kontoinhaber trifft/treffen mit der Sparkasse folgende Vereinbarungen:**

**1. Unterhält der Kontoinhaber mehrere Konten, so bildet jedes Kontokorrentkonto ein selbstständiges Kontokorrent.**
Kontoauszüge/Rechnungsabschlüsse erteilt die Sparkasse derzeit

per Kontoauszugsdrucker / jeweils monatlich zum Ultimo / elektronisch im OnlineBanking

**2. Bei Gemeinschaftskonto**
Einzelverfügungsberechtigung: Sind mehrere Personen Kontoinhaber, so ist jede von ihnen berechtigt, über das Kontoguthaben sowie einen eingeräumten Kreditrahmen zu verfügen und das Konto bei einer entsprechenden Duldung durch die Sparkasse auch darüber hinaus in Anspruch zu nehmen (geduldete Kontoüberziehungen). Ferner ist jeder Kontoinhaber berechtigt, Dritte zu bevollmächtigen.
Jeder Kontoinhaber haftet auch für solche Verbindlichkeiten, die durch Verfügungen eines anderen Mitkontoinhabers oder dessen Bevollmächtigten über das Konto entstanden sind. Dies gilt auch für Kontoüberziehungen in einem der Kontoverbindung angemessenen Rahmen.
Jeder Kontoinhaber kann im Einvernehmen mit der Sparkasse und mit Wirkung für die Zukunft das Konto insoweit umwandeln, als die Kontoinhaber nur noch gemeinschaftlich Rechte aus dem Gemeinschaftskonto geltend machen. Die Sparkasse wird die anderen Kontoinhaber über die Umwandlung unterrichten.
Im Todesfalle kann der überlebende Ehegatte/Lebenspartner gem. LPartG als Kontomitinhaber das Konto auflösen oder auf seinen Namen umschreiben lassen

Nur gemeinschaftliche Verfügung.

**3. Kontovollmacht**
Die auf dem Unterschriftenblatt als Zeichnungsberechtigte genannten Personen sind in der dort angegebenen Weise bevollmächtigt, über das Kontoguthaben sowie einen eingeräumten Kreditrahmen zu verfügen. Ferner können sie das Konto bei entsprechender Duldung durch die Sparkasse auch darüber hinaus in Anspruch nehmen (geduldete Kontoüberziehung), soweit dies in einem der Kontoverbindung angemessenen Rahmen bleibt.
Die Vollmacht schließt das Recht ein, für den Kontoinhaber Scheckverbindlichkeiten[1] zu begründen sowie Kontoauszüge, Kontoabrechnungen und sonstige das Konto betreffende Schriftstücke entgegenzunehmen, zu prüfen und anzuerkennen. Die Beschränkungen des § 181 BGB gelten für die/die Bevollmächtigte/n nicht.
Die Vollmacht gilt der Sparkasse gegenüber, bis ihr ein schriftlicher Widerruf zugeht, sie erlischt auch nicht mit dem Tode des Vollmachtgebers.

**4. Gerichtsstand**
Soweit sich die Zuständigkeit des allgemeinen Gerichtsstandes der Sparkasse nicht bereits aus § 29 ZPO ergibt, kann die Sparkasse ihre Ansprüche an ihrem allgemeinen Gerichtsstand verfolgen, wenn der im Klageweg in Anspruch zu nehmende Kontoinhaber Kaufmann oder eine juristische Person im Sinne der Nr.6 AGB ist oder bei Vertragsabschluss keinen allgemeinen Gerichtsstand im Inland hat oder später seinen Wohnsitz oder gewöhnlichen Aufenthaltsort aus der Bundesrepublik Deutschland verlegt oder sein Wohnsitz oder gewöhnlicher Aufenthalt im Zeitpunkt der Klageerhebung nicht bekannt ist.

**5. Allgemeine Geschäftsbedingungen**
Es wird ausdrücklich darauf hingewiesen, dass die derzeit geltenden Allgemeinen Geschäftsbedingungen der Sparkasse Bestandteil der gesamten Geschäftsverbindung sind. Für einzelne Geschäftsbeziehungen gelten ergänzend oder abweichend besondere Bedingungen, z.B. für den Überweisungsverkehr, den Scheckverkehr, den kartengestützten Zahlungsverkehr, den Sparverkehr, für Wertpapiergeschäfte, auf die die Sparkasse im zutreffenden Fall ausdrücklich hinweisen wird.
Die Allgemeinen Geschäftsbedingungen einschließlich der genannten besonderen Bedingungen können in den Kassenräumen eingesehen werden und werden auf Wunsch zur Verfügung gestellt.

[1]Soll die Vollmacht das Recht einschließen, für den Kontoinhaber Wechselverbindlichkeiten zu begründen, ist dies unter Nr. 6 ausdrücklich zu vereinbaren.

☒ Ja  ☐ Nein   Dieses Konto wird für meine (unsere) eigene Rechnung geführt und nicht für einen anderen wirtschaftlich Berechtigten.

☒ Ja  ☐ Nein   Ich (Wir) möchte(n) den Service der Haspa nutzen, auch telefonisch und/oder per Telefax informiert und beraten zu werden.

<u>29.01.2008</u>
(Datum)       Unterschrift des/der Kontoinhaber/s       TOM Shipping Vermittlung GmbH

# Exhibit 8

Dr. Bernhard v. Schweinitz
Dr. Detlef Thomsen
Dr. Jürgen Bredthauer
Dr. Andre Vollbrecht
Dr. Michael Commichau
Dr. Martin Mulert, LL.M.

N O T A R I A T    am Gänsemarkt

Gänsemarkt 50
20354 Hamburg
Tel. (040) 35 55 3 – 0
Fax (040) 35 55 3 – 300
info@notariat-amgaensemarkt.de

## Confirmation

regarding

## TOM Shipping Vermittlung GmbH and MOS Overseas Shipping Vermittlung GmbH

I, the Notary Public Dr. Martin Mulert, Hamburg, hereby confirm that

1.    TOM Shipping Vermittlung GmbH with registered seat in Hamburg and with a stated capital of EUR 45.000,00 is registered in the Commercial Register of Hamburg under No. HRB 102397 and that Asadollah Rahimzadeh and Rasa Amlashi are registered as managing directors of this company in the Commercial Register;

2.    Attached to this Confirmation is a copy of a Shareholders` List of TOM Shipping Vermittlung GmbH which the managing directors of this company handed in to the Commercial Register;

3.    MOS Overseas Shipping Vermittlung GmbH with registered seat in Hamburg and with a stated capital of EUR 120.000,00 is registered in the Commercial Register of Hamburg under No. HRB 60389 and that Tofigh Majdpour and Majid Majdpour are registered as managing directors of this company in the Commercial Register;

4.    Attached to this Confirmation is a copy of a Shareholders` List of MOS Overseas Shipping Vermittlung GmbH which the managing directors of this company handed in to the Commercial Register.

Hamburg, 31 March 2008

Dr. Martin Mulert, Notary Public



Dok1.doc

LISTE DER GESELLSCHAFTER

der Firma

TOM Shipping Vermittlung GmbH

--------------------------------------------------------------------

Gesellschafter

Herr Asadollah Rahimzadeh,
geb. am 24. April 1932,
Hamburg,
mit einer Stammeinlage in Höhe von          EUR    15.000,00

Frau Rasa Soufi Amlashi,
geb. am 5. September 1985,
Hamburg,
mit einer Stammeinlage in Höhe von          EUR    15.000,00

Frau Akram Alizadeh Matanagh,
geb. am 24. Januar 1959,
Hamburg,
mit einer Stammeinlage in Höhe von          EUR    15.000,00

                                            ----------------

Stammkapital                                 EUR    45.000,00
                                            ================

Hamburg, den 04. September 2007

_A. Rahimzadeh_                              _Soufi_
(Asadollah Rahimzadeh)                       (Rasa Soufi Amlashi)

Dr. Bernhard v. Schweinitz
Dr. Detlef Thomsen
Dr. Jürgen Bredthauer
Dr. Andre Vollbrecht
Dr. Michael Commichau
Dr. Martin Mulert, LL.M.

**NOTARIAT am Gänsemarkt**

Gänsemarkt 50
20354 Hamburg

Tel. (040) 35 55 3 - 0
Fax (040) 35 55 3 - 300

info@notariat-amgaensemarkt.de

## LISTE DER GESELLSCHAFTER

der Firma

**MOS Overseas Shipping Vermittlung GmbH**

Anschrift: Neuer Wall 8 in 20354 Hamburg
(Amtsgericht Hamburg, HRB 60389)

Gesellschafter:

Herr Tofigh Majdpour,
Kaufmann, geb. am 09.08.1950,
Wohnort: Hamburg, mit einem Geschäfts-
anteil in Höhe von nom.                                    EUR 30.000,00

Herr Sina Majdpour,
Kaufmann, geb. am 17.09.1978,
Wohnort: Hamburg, mit einem Geschäfts-
anteil in Höhe von nom.                                    EUR 30.000,00

Herr Majid Majdpour,
Kaufmann, geb. am 27.03.1954,
Wohnort: Hamburg, mit einem Geschäfts-
anteil in Höhe von nom.                                    EUR 30.000,00

Herr Naser Majdpour,
Kaufmann, geb. am 11.03.1958,
Wohnort: Hamburg, mit einem Geschäfts-
anteil in Höhe von nom.                                    EUR 30.000,00

Stammkapital                                              EUR 120.000,00
                                                          ================

Hamburg, den   30. Juni 2004

Geschäftsführer:

_____        _____
Tofigh Majdpour                  Majid Majdpour

Kr 0448 MM - Ges Liste Euroumstellung.DOC

